UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert D. HORN, Jr. and Peggy P.
Horn, Defendants-Appellants.

Nos. 78–1506, 78–1507.

United States Court of Appeals,
Tenth Circuit.

Argued Aug. 8, 1978.

Decided Sept. 6, 1978.

William S. Price, Asst. U. S. Atty., Oklahoma City, Okl. (Larry D. Patton, U. S. Atty., Oklahoma City, Okl., on the brief), for plaintiff-appellee.

Gary James Joslin, Salt Lake City, Utah, for defendants-appellants.

Before HOLLOWAY, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendants, husband and wife, were charged in separate counts of an indictment with the offense of submitting false exemption statements to employers, contrary to 26 U.S.C. § 7205. In the Robert D. Horn, Jr. indictment, it was alleged that on April 12, 1977, he was employed by Horn Seed Company, Inc., and was required by the Internal Revenue laws to furnish Horn Seed Company, Inc. with a signed withholding allowance or exemption certificate relating to the number of withholding allowances or exemptions claimed on or about the date of the commencement of employment by Horn Seed Company, Inc., and that he did willfully submit a false exemption from a withholding statement claiming that he had incurred no income tax liability for the year 1976; and that he anticipated no taxable income in 1977. The further allegation was that he had incurred liability for federal income tax for 1976, and he anticipated that he would incur liability for 1977, in violation of § 7205, Internal Revenue Code.

The Peggy P. Horn indictment is substantially the same as that which charged Robert D. Horn, Jr., except that she was an employee of Kerr-McGee Corporation. She too was alleged to have violated § 7205, Internal Revenue Code, based upon her alleged false statement that she had incurred no liability for taxes in 1976 when, in fact, she had, and that she did not anticipate

having tax liability in 1977 when, in fact, she anticipated that she would.

This is an interlocutory appeal from a judgment of the district court, which declared a mistrial following the court's decision that the jury was unable to agree on a verdict.

On May 18, 1978, the jury was selected and a trial was had as to both defendants. On May 19, at 5:30 p. m., the case was submitted to the jury. At about 7:00 p. m., the jury sent a note to the Judge inquiring about a civil suit which the Horns had brought. There had been some evidence regarding this during the trial because it had to do with the tax matters in the cause being tried. The court answered the questions and furnished to the jury certain exhibits which it had requested. Deliberations continued, but at 7:30 the jury sent a note asking for clarification of an instruction which seemed somewhat at variance with the indictment. The court clarified this and again the jury resumed deliberations. However, at 8:57 p. m., the jury sent in a note signed by the foreman stating: "The jury appears to be deadlocked." The judge brought the jurors into the courtroom and told them that he intended to declare a recess for the night. The jurors were instructed to return at 9:00 the next morning in order to resume deliberations. The next morning, when the jury appeared, the court discussed the note and in the course of this said that they had deliberated something like three hours and that the court did not consider this to be sufficient time to (fully) consider the matter. He then reread the last paragraph of the instruction submitted. This told the jury that its verdict must be unanimous and reminded them of their duty to consult with one another and of their duty to reach an agreement if agreement is possible "without violence to individual judgment." The court continued that each juror must decide the case on an individual basis, but only after an impartial consideration of the evidence. They were also told to reexamine their views and that they should not hesitate to change their opinions if convinced that their opinions were wrong, but that "no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of fellow jurors or for the mere purpose of returning a verdict." After that the court proceeded to give a more formal *Allen* charge. He also answered the question that had been submitted regarding the civil suit relating to the criminal case which apparently had been filed by the defendants. The court told the jury that the suit had been dismissed and added "so if that is bothering you, if you think that case is going to decide the issues here you can put it out of your mind because that case, the defendants lost it and here is the order right here in Case No. C–77–1111–C." The judge concluded: "So you Ladies and Gentlemen go into the jury room now with a spirit of adhering to the law and to the evidence in the case and see if you cannot reach a verdict."

At 10:40 a. m., that is after the jury had deliberated for somewhat more than an hour, they were brought back into court. Without ceremony, the judge announced:

> I am now going to do what I should have done last evening when I received your note that you were deadlocked. I perhaps should have at that time declared a mistrial but I thought maybe going home and sleeping upon it, being a little fresher this morning and may be you might break the deadlock but you have been out an hour this morning and have not so I am going to declare a mistrial . . . . .

There was no inquiry of the foreman or of individual jurors whether it was a consensus of the jury that they had made progress. Nor did the judge inquire whether the members expected to reach a verdict. Instead the court *sua sponte* declared a mistrial. The court, as the jury was discharged, stated that the cause would be set down for trial immediately. However, the district court later granted a stay of proceedings so that the case could be appealed. This court ruled that the cause was a proper one for immediate appeal.

Appellants' contention is that the "mistrial" results in a final judgment of dismiss-

al, which bars further trial for the same offense.

\* · \* \* \* \* \*

The question which we must now decide is whether in the light of the facts and the applicable law, the trial court was justified in discharging the jury. The ultimate or eventual issue is whether the failure of the court to inquire of the jury as to the state of their deliberations, considered with the remainder of the record, calls for a judgment that the mistrial was improvidently granted.

The argument advanced is that there was a lack of "manifest necessity" for declaring a mistrial *sua sponte;* that the court was required to take steps to ascertain and demonstrate clearly that it was at the time of granting the mistrial impossible for the jury to reach a verdict. *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824); *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); and *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). The further argument is that having failed to take any affirmative steps, a second trial was and is barred by the double jeopardy clause of the Fifth Amendment.

In the trial court's written order it stated that "It is clear from *Perez,* the very fact that a jury is unable to agree upon a verdict, satisfies the requirement of manifest necessity and the declaration of a mistrial does not bar future prosecution. *United States v. Goldstein,* 479 F.2d 1061 (2d Cir. 1973), *cert. denied,* 414 U.S. 873 [94 S.Ct. 151, 38 L.Ed.2d 113] (1973)." Unquestionably, if a jury is unable to agree upon a verdict, the trial court is justified in declaring a mistrial. The question is whether the judge can conclude that the jury is unable to reach a verdict without making inquiry, which objectively shows that such is the situation.

\* \* \* \* \* \*

The place of beginning a consideration of the case law is the 1824 decision of the Supreme Court in *United States v. Perez, supra.* The succinct and precise opinion in that case states that the courts have authority to discharge a jury from giving a verdict, "whenever, in their opinion, taking all of the circumstances into consideration, there is a manifest necessity for the act, or the ends of justice would otherwise be defeated." The Court further explains that: "They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere."

The most recent and most significant discussion of the subject is that found in *Arizona v. Washington, supra.* Although it was not a jury disagreement case, it nevertheless considered whether the trial court was correct in its grant of a mistrial motion at the behest of the district attorney, where defense counsel in a murder case had sought to go outside the record and tell the jury about the improper withholding of evidence by the district attorney in the prior trial, which withholding had led to the reversal of the previous conviction. The Supreme Court construed the words "manifest necessity", saying:

The words "manifest necessity" appropriately characterize the magnitude of the prosecutor's burden. For that reason Mr. Justice Story's classic formulation of the test has been quoted over and over again to provide guidance in the decision of a wide variety of cases. Nevertheless, those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word "necessity" cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a "high degree" before concluding that a mistrial is appropriate.

98 S.Ct. at 830–31. The Supreme Court added that the strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the state. At the other extreme, the Court said, is the mistrial

premised upon the trial court's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial. Mr. Justice Stevens added that the argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt has been uniformly rejected, but that the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. If the court, however, discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his right to have his trial completed by a particular tribunal. If, on the other hand, the court fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there is a risk that a verdict may result from pressure. The appellate court, it was pointed out, must also exercise care in such a case to avoid condemning the action of the trial court in granting a mistrial simply because it disagrees with his conclusion; that the trial court's decision during the trial that the jury is deadlocked is given great deference by the reviewing court.

In *Arizona v. Washington, supra,* it was concluded that the trial court acted properly in granting the mistrial following the prejudicial statement of the defense attorney.

The Fifth Circuit in *United States v. Gordy,* 526 F.2d 631 (5th Cir. 1976), lists criteria for determining whether there was manifest necessity: *First,* the length of the trial; *second,* the complexity; and, *third,* the statement from the jury that it is hopelessly deadlocked. The court pointed out that the present inability of the jury to agree is not the problem. Rather, the question is whether such an agreement is possible. The Fifth Circuit concluded that the court's communications with the jurors prior to discharge were inconclusive and failed to demonstrate manifest necessity for termination of the trial. The record failed to demonstrate that the panel members felt that no verdict could be reached given more time. It was observed that the trial was one in which the judge was anxious to

terminate the proceedings in order to depart El Paso (where the trial was taking place). Because of the lack of certainty that a verdict could not be reached, the court concluded that manifest necessity was not present.

In *Arnold v. McCarthy,* 566 F.2d 1377 (9th Cir. 1978), the Ninth Circuit said that the trial court had not abused its discretion in finding that the jury was hopelessly deadlocked because manifest necessity was there present. The court through Judge Carter listed seven criteria:

(1) a timely objection by defendant, (2) the jury's collective opinion that it cannot agree, (3) the length of the deliberations of the jury, (4) the length of the trial, (5) the complexity of the issues presented to the jury, (6) any proper communications which the judge has had with the jury, and (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict.

It then held that there was adequate support for the trial judge's determination that the jury was hopelessly deadlocked:

*The most critical factor is the jury's own statement that it was unable to reach a verdict.* United States v. See [9 Cir., 505 F.2d 845] supra at 851. Upon receiving a communication from the jury stating that it cannot agree, the trial court must question the jury to determine independently whether further deliberations might overcome the deadlock. * * * Merely questioning the jury foreman may not be sufficient, but this circuit has recently held that questioning the foreman individually and the jury either individually or as a group is satisfactory. *United States v. See,* supra, at 851. At trial below the judge asked the foreman himself and the jury as a group whether they felt there was a reasonable probability of reaching a verdict. Only one juror felt there was. (Emphasis supplied).

566 F.2d at 1387.

In *United States ex rel. Russo v. Superior Court,* 483 F.2d 7 (3d Cir.), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315

(1973), it was ruled that retrial was barred where the trial court had declared a mistrial *sua sponte* following 15 hours of deliberation, because he considered the jury exhausted, but had not inquired about their physical condition or had not asked of progress they had made toward a verdict.

In *United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034 (3d Cir. 1975), there had been two previous trials which had ended in mistrials. After six hours of deliberation the court called the jury back and asked the foreman whether there was any hope of a verdict. The response was that he believed not. Since there had not been any solicitation of the other jurors' views and in view of the fact that all of the proceedings were perfunctory and in view of the relative shortness of the deliberations (six and one-half hours), the Third Circuit in an opinion by Judge Adams concluded that the action of the district court declaring a mistrial was invalid. Two factors governed. The shortness of the deliberations and the failure to conduct more detailed questioning as to whether the jury believed that it was unable to agree, together with the failure to question anyone except the foreman.

The Second Circuit case of *United States v. Beckerman,* 516 F.2d 905 (2d Cir. 1975), bears some resemblance to our case, but is, at the same time, significantly different. There the defendant was charged with possession with intent to distribute 28 grams of cocaine. Following a three-day trial, the jury was dismissed without reaching a verdict after the forewoman reported a deadlock. Defendant's motion to dismiss on the ground of double jeopardy was denied by the United States District Court for the Southern District of New York. The jury had deliberated seven hours on the single charge following a short trial. At the end of that period of time the jury reported that it was deadlocked and the jury forewoman stated that more time would not enable the jury to reach a verdict. Also, the defendant did not object to granting a mistrial. The court in that case brought the jury into the courtroom and read the note and asked whether that meant that they were unable to reach a verdict; "whether you feel with a little more time you might be able to reach a verdict." It was after the jury responded negatively that the court declared a mistrial. Judge Motley, the trial judge, had given a modified *Allen* charge in her original instructions. A request was made by counsel for the government that the court give the jury a regular *Allen* charge when they had reported by note their inability to agree. She refused to do this.

■ If the trial judge in this case had followed the same line, that is, had called the jury into the courtroom and had inquired of it what progress, if any, had been made, and whether there was a possibility that the jury could reach a verdict, and if the jury had reported that there existed no apparent possibility, there would be something in the record on which to base a conclusion that there was manifest necessity for the declaring of a mistrial. As it now stands, there is virtually a complete lack of evidence of deadlock as of the time that the mistrial was granted. And there is a dearth of evidence as to the jury's inability thereafter to reach a verdict. On the other hand, in *Beckerman,* the inability to reach a verdict at the time of the inquiry and with further deliberation was the point on which the Second Circuit focused its attention in concluding that the action of the trial court in declaring the mistrial was a proper discharge of its vested authority.

One other case must be considered and that is *United States v. Gunter,* 546 F.2d 861 (10th Cir. 1976), *cert. denied,* 430 U.S. 947, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977). There the jury was unable to agree in the first trial. It was discharged and a mistrial was declared without objection. A second trial was held and there two of the defendants were found guilty and the six remaining defendants received an order declaring a mistrial due to an inability of the jurors to agree upon the verdict as to them. At the time there was no objection on the part of the defense to the discharge of the jury. Following conviction in the third trial, how-

ever, the contention was advanced that the court had erred in declaring the second mistrial. This court concluded that the defense of double jeopardy was unavailable. The exact facts are not reported in the opinion. It does, however, appear in the court's opinion that the jury clearly indicated to the trial judge that the members of the jury were in irreconcilable conflict as to the six defendants. The big issue on appeal was not so much that the trial court had been justified in the second trial in declaring a mistrial as it was whether it was error to try the defendants a third time. Seemingly, the court was satisfied with the record made as to the irreconcilable state of things at the time of granting the mistrial.

In the case at bar there is a complete lack of evidence that the jury was in disagreement at the time that the mistrial was granted. It is true that the night before mistrial was declared the jury had sent in a note saying that it was unable to agree. What the situation was the next morning when they returned, and after the *Allen* charge was given, we do not know, because there was no inquiry as to what the situation was. Had the court, following the one-hour plus deliberation, called the jurors back into court and made an inquiry as to their progress, and had it asked whether they were close to a verdict, or, if deadlocked, whether all members of the jury agreed that this was the situation, then there would have been a good basis for arguing that manifest necessity existed. The term "manifest" suggests apparent or that which is clear and which requires no proof, that which is open, palpable, incontrovertible. It is synonymous with evident, visible or plain. *See* 2 Bouv. *Law Dict.,* Rawles' Third Revision, at 2083. It definitely does not mean something which exists only in the mind of the judge.

Also, the sending of the note by the foreman the night before fails to establish manifest necessity the next morning following an hour plus of deliberation, because the state of jury deliberation is not unchanging. When we consider also that the trial court acted *sua sponte* following relatively short (in time) deliberations, we are unable to uphold the decision granting the mistrial. We do add, however, that we have no doubt as to the good faith belief of the trial judge that the jury was deadlocked. Regardless of this, we must hold that this was insufficient.

Being of the opinion that the trial court's ruling is at odds with the decision of the Supreme Court and of the courts of appeal which have been mentioned, we are constrained to reverse the judgment of the trial court which denied the motion to dismiss asserting double jeopardy. Accordingly, the cause is reversed and remanded for further proceedings consistent with the views expressed herein.