**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Martin BYRSKI, Michael Farmer, Anthony Fucalaro, Eugene Hornowski, Kevin McNab, James J. Villalpando, and Mathew Wilson, Defendants–Appellants.**

No. 88–1725.

United States Court of Appeals,
Seventh Circuit.

Argued May 16, 1988.
Decided Aug. 5, 1988.

**956**

Edna Selan Epstein, Sidley & Austin, Chicago, Ill., for defendants-appellants.

James G. Schweitzer, Asst. U.S. Atty. (Anton R. Valukas, U.S. Atty.), Deputy Chief, Sp. Prosecutions Div., Chicago, Ill., for plaintiff-appellee.

Before COFFEY, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Defendants-appellants' first trial ended in a mistrial when the jury was unable to reach a unanimous verdict. The defendants neither requested a mistrial nor consented to its declaration. When the district court subsequently set a date for a new trial, the defendants filed a motion to dismiss the indictment on the ground that the double jeopardy clause of the fifth amendment precluded their reprosecution. The defendants argued that the district court abused its discretion in finding the jury deadlocked and declaring a mistrial. The court denied the defendants' motion to dismiss the indictment concluding that there was manifest necessity for the mistrial.

On April 14, 1988 the defendants filed a notice of appeal from the court's denial of their motion to dismiss. On the same day, the district judge held a status hearing at which he concluded that the defendants' double jeopardy argument was frivolous.[1] The defendants then filed an emergency motion to stay their second trial and a motion for an expedited appeal. Although we denied the defendants' original motion to stay, on reconsideration we granted it in part and heard argument on an expedited basis.[2] Because we hold that the district court did not abuse its discretion in declaring a mistrial, we affirm the judgment of the district court.

I.

In the fall of 1987, the defendants were tried on fifty-three criminal counts involv-

---

1. A double jeopardy claim that is not colorable is not appealable. *Richardson v. United States,* 468 U.S. 317, 322, 104 S.Ct. 3081, 3084, 82 L.Ed. 2d 242 (1984). Therefore, filing a notice of appeal from a denial of a frivolous motion to dismiss an indictment on double jeopardy grounds does not divest the district court of jurisdiction. *United States v. Cannon,* 715 F.2d

1228, 1231 (7th Cir.1983), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984).

2. We heard oral argument on May 16, 1988; that same afternoon this court issued a summary order affirming the district court's judgment and indicating that this opinion would follow.

ing charges of extortion, racketeering, and possession and distribution of narcotics. The trial lasted thirty-two days; it was conducted four days a week for eight weeks. Jury deliberations began on December 10, 1987. Between December 10 and December 23, when the judge declared a mistrial, the jury deliberated for a total of approximately thirty hours.

From the beginning of the deliberation process the jurors generated an unusual volume of notes to the court.[3] These notes, which addressed both substantive issues and personality conflicts, evidenced the difficult and overly-contentious nature of this jury's deliberative process. Each time a juror submitted a note to the court, the judge called all of the attorneys for the parties into the courtroom to discuss the appropriate course of action. The judge then read the note into the record in open court and elicited comments from the attorneys as to how the court should respond to the question at hand. This process was complicated both by the number of attorneys who participated in the trial and, at times, the continuous stream of notes from the jury to the court. After hearing the views of all parties, the court ruled on each matter and sent the jury a written response attached to a copy of the note.

On the first day of deliberations, December 10, 1987, this process for the jury's communications with the court functioned successfully. The jurors asked three questions, each one submitted through the foreperson. All three questions related to the logistical difficulties involved in the onset of deliberations in a complex case. On December 11 the jurors asked three additional questions, only one of which was signed by the foreperson. Two of the three questions raised, for the first time, the possible inability of the jury to reach a

verdict. The first of these two was signed by the foreperson and asked: "What happens when we cannot all agree on a particular charge. Some say guilty some say not guilty. Which way do we go?" The second note, signed by a single juror, read: "It seems that no one agrees with my opinions, that I am holding up the process, and I request to be let go and an alternate juror be called in to expedite this matter." The court instructed the jurors to refer to the jury instructions and to continue to deliberate. Because the following day was Saturday, the jury's deliberations were continued until Monday, December 14.

On Monday three more notes were sent to the court, none of which was signed by the foreperson. None of these three notes raised the issue of a jury deadlock. The jurors deliberated for only a few hours on December 15 and 16 because of blizzard conditions in the area and one juror's illness. The jury did not send any notes to the court on either date.

On Thursday, December 17, 1987, the jury's difficulties intensified. As the day progressed, three jurors submitted notes to the court individually, each note more indicative of discord than the last. In the first note, which was submitted at 11:00 a.m., a juror discussed at length the difficulties she was experiencing with the judge's instructions. This note concluded: "How long must discussion on apparent deadlock on separate counts continue?" At approximately 12:50 p.m., the foreperson and another juror sent separate notes to the court that focused on the problems the jury was having in reaching a verdict. The foreperson's note stated:

> We, the jurors are having a hard time charging the seven defendants on the counts charged. We are deadlocked on

---

**3.** The district court gave the jury the *Seventh Circuit Committee Instruction 7.05* which governs communications between the jury and the court. The instruction provides:

> I do not anticipate that you will need to communicate with me. If you do, however, the only proper way is in writing, signed by the foreperson, or if he or she is unwilling to do so, by some other juror, and given to the Marshal.

Despite this instruction, several jurors submitted notes individually to the judge without any indication that the foreperson was unwilling to sign the notes. Neither the court nor the parties made any additional attempt to direct communications through the foreperson. Accordingly, we will specifically indicate if a note came from the foreperson.

some defendants and on others we are unanimous on some (counts), deadlocked on other (counts) for each (defendant).

We, the jurors attempted to go over the not unanimous counts and one juror decided that he was not voting again. I'm not saying that we wouldn't still be deadlocked, but we can't go over each defendant's (counts) with 11 jurors.

The second juror's note indicated more specifically that the jury had reached a deadlock and ended with a request that she be dismissed from the jury. Upon receiving these notes the judge conferred with counsel. The parties agreed that the court should respond to the notes by bringing the jury into the courtroom and repeating the *Silvern* instruction.[4]

The following afternoon, December 18, nine jurors sent a note to the court indicating their belief that further deliberations would be futile. The note read in part:

We the jury feel that we have exhausted our efforts in determining the guilt or innocense [sic] of the defendants charged.... We are unanimous in our decision on some counts however on other counts we are hopelessly deadlocked. Per your instructions, we have gone over each count numerous times and feel that further resolution as to the guilt or innocence of the defendants is hopeless and unresolvable.[5]

After conferring with the parties' attorneys, the court informed counsel and the defendants that he intended to bring the jury into the courtroom and find out if they were deadlocked. The judge further explained that if there was any indication on the part of the jurors that further deliberations would help them reach a verdict, he would read the *Silvern* instruction again and send the jury back to continue deliberating. After a brief recess, the court brought the jury into the courtroom and questioned the jurors individually about whether further deliberations would be helpful. When three jurors responded affirmatively, the judge read the *Silvern* instruction and sent the jury back to the jury room. The judge then conferred with counsel in open court and adopted the defendants' consensus view that the jury should be allowed to continue deliberating. In so concluding, the court deferred ruling on the issue of whether the jury was deadlocked, stating instead: "Maybe they can resolve the entire case. If they can't, then it seems to me that they will be able to tell us that next week." The jury's deliberations were then continued until the following Monday, December 21.

On December 21, the court received a note from one juror dated December 19, 1987. The note stated that the juror was frustrated by the other jurors' unwillingness to discuss the evidence presented during the trial, and indicated that one juror had dominated the process with tirades of abuse. She concluded that due to the jury's "immature interactions," the deliberative process had been irreconcilably fractured, and the jury had reached an impasse. The court conferred with counsel about the note, and suggested that the jury

**4.** The *Silvern* instruction, which the district court also included in the final instructions is derived from *United States v. Silvern*, 484 F.2d 879 (7th Cir.1973) (en banc). The judge gave the instruction as follows:

The verdict must represent the considered judgment of each juror. Your verdict, whether it be guilty or not guilty, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of your fellow jurors or for the purpose of returning an unanimous verdict.

The twelve of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement which is consistent with the individual judgment of each juror.

You are impartial judges of the facts. Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt.

**5.** As the panel noted at oral argument, although this note was signed "The Jury," it did not represent the unanimous view of the jury.

should be polled again on the issue of deadlock. The defendants collectively objected to the judge's proposal and as a result, the judge did not poll the jury. The government's counsel then questioned the efficacy of permitting further deliberations. In response, the judge stated that no one knew what the jury was thinking because

> on Friday we read the *Silvern* charge and had a discussion with the jurors with a view toward seeing what the situation would be on Monday. We have heard nothing from the jurors about their deliberations or the fact that they are deadlocked today ... and it seems to me that we should allow the jurors to continue to deliberate until they tell us that they are irreconcilably deadlocked.

Due to the absence of one juror for a funeral, deliberations were continued until Wednesday, December 23, 1987. On December 23 the court received yet another note from a juror which read:

> Per your direction on Friday 18 December, we the jury did return to the jury room in an attempt to resolve individual differences and arrive at a proper and unanimous decision for all defendants.
>
> Although some progress toward that end was achieved, regrettably I am convinced we are again at an impasse, and further deliberation by this jury would not, in my opinion, be in the best interests of all concerned.
>
> While I am submitting this as an individual member there are other members who feel as strongly in their views as I in this matter and feel further deliberation would be futile.

The judge again conferred with counsel. The defendants' collective position was that the court should tell the jury to keep deliberating. In contrast, the government argued that the court should ask the jury for verdicts with respect to any counts on which they were unanimous.[6] The court concluded that based on the cumulative

notes from the jury, and the oral communications between the judge and jury in open court, the jurors should return verdicts for any counts on which they had reached a unanimous agreement.

The defendants objected to the court accepting verdicts on individual counts, and defendant Villalpando moved for a mistrial as to any counts on which the jury could not return a unanimous verdict.[7] The other defendants joined this motion, and asked the judge to rule on it before seeking partial verdicts from the jury. The district court denied the motion and sent the jury a note directing them to fill out the verdict forms as to the counts upon which they had reached unanimous agreement.

At 1:00 p.m. on December 23, 1987, the foreperson sent a note to the court that read: "We, the jurors, do not have any counts unanimous. Therefore, we cannot fill out the verdict forms." The defendants jointly moved to continue the deliberations. The government objected, arguing that the jury clearly could not make any progress and could not reach an uncoerced verdict. The district court, responding to defendants' collective motion for continued deliberations, noted that:

> The jurors, on an earlier occasion had indicated that they had reached unanimous agreement as to counts. They are now, it seems to me, in a position where they have now even retracted from that unanimous agreement, and it is apparent to me, and I think everyone, that this jury, despite all of the efforts and all of the waiting that we have made, cannot reach a unanimous agreement as to any counts.

The judge then brought out the jury, and asked the foreperson if it was true that the jury could not vote unanimously on any of the counts of the indictment with respect to any of the defendants. When the foreperson confirmed that there was no una-

---

**6.** On December 18 the jury indicated in a note that they had reached unanimity on some counts. *See supra* at 957–58.

**7.** During the same conference, defendant Villalpando also moved for a mistrial based on the judge's refusal to dismiss one juror who told the

court that she had taken notes at night during the pendency of the trial and was using them to refresh her memory during the deliberative process. Defendant Farmer joined this motion, which the court denied.

nimity as to any count, the court immediately declared a mistrial as to all counts for all of the defendants. Subsequently, the court set the defendants' retrial for April 2, 1988.

On March 24, 1988, the defendants collectively moved to dismiss the indictment on the grounds that a retrial on the same charges would violate the double jeopardy clause of the fifth amendment. The district court denied this motion on April 8, 1988 and denied the defendants' motion for a stay of their second trial pending appeal. The defendants filed a notice of appeal on April 14, 1988.[8]

## II.

This appeal raises the issue of the procedures district courts should follow when declaring a mistrial without a defendant's request or consent on the ground that the jury is unable to reach a unanimous verdict. The defendants contend that because there was no manifest necessity, the district court abused its discretion in declaring a mistrial. They therefore argue that the double jeopardy clause of the fifth amendment[9] bars the government from reprosecuting them on the same criminal charges.

An individual's right to be spared the emotional and financial costs of successive trials, to be protected from unfair declarations of mistrial designed to give the government a second chance to convict, and to have his or her trial completed by a specific tribunal, "must be balanced against 'the public's interest in fair trials designed to end in just judgments.'" *Lovinger v. Circuit Court*, 845 F.2d 739, 743 (7th Cir.1988) (*quoting Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). Thus, the double jeopardy clause does not bar all reprosecutions. When a jury is truly unable to reach a

unanimous verdict the defendant's jeopardy is not terminated. *Richardson v. United States*, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984).

Where a mistrial is declared without the defendant's consent, the defendant may be retried as long as there was "manifest necessity" for the termination of the first trial. *United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); *Lovinger*, 845 F.2d at 743. "Under this standard, the trial judge may declare a mistrial only if a 'scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.'" *Lovinger*, 845 F.2d at 745 (*quoting United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion)). "[A] retrial following a 'hung jury' does not violate the Double Jeopardy Clause." *Richardson*, 468 U.S. at 324, 104 S.Ct. at 3085. *See also Arnold v. McCarthy*, 566 F.2d 1377, 1386 (9th Cir.1978) (collecting cases) ("[T]he paradigm example of 'manifest necessity' sufficient to permit a second trial of a defendant in a criminal case occurs when the jury cannot reach a verdict."). Reviewing courts must accord great deference to a trial court's determination that there was manifest necessity to declare a mistrial. *Arizona v. Washington*, 434 U.S. 497, 510, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). Thus, we review a district court's finding of manifest necessity under an abuse of discretion standard. *Id.* at 506 n. 18, 98 S.Ct. at 830 n. 18 (*citing United States v. Perez*, 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824)). *See also Arnold*, 566 F.2d at 1386 ("So long as the trial judge has not abused his [or her] discretion, a mistrial because of inability to reach a verdict will not bar a second trial.").

---

**8.** The defendants filed an emergency motion on April 20, 1988, seeking a stay of their second trial. The defendants also filed a motion for an expedited appeal. On April 22, 1988, this court denied the defendants' motions on the ground that they did not meet the criteria justifying a stay pending appeal. On May 3, 1988, the defendants filed a petition for rehearing and suggestion for rehearing *en banc*. The panel granted the petition for rehearing in part and sched-

uled an expedited oral argument. Because the defendants' second trial was rescheduled, the court was able to hear oral argument on the appeal before the second trial began.

**9.** "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

Although the Supreme Court has not established any mechanical rules for determining when manifest necessity exists, federal appellate courts have isolated several criteria that are helpful for determining whether there was manifest necessity to declare a mistrial in the case of apparent jury deadlock. *See United States v. Horn*, 583 F.2d 1124, 1126–29 (10th Cir.1978) (collecting cases). For example, in *United States v. Gordy*, 526 F.2d 631 (5th Cir. 1976), the court considered the length of the trial, the complexity of the trial, the jury's statement that it was hopelessly deadlocked, and communications between the judge and jury. *See also Webb*, 516 F.2d 1034 (court should consider the length of the trial, the nature and complexity of the trial issues, the jurors' comments, and the likelihood of juror exhaustion and coercion); *United States v. Lansdown*, 460 F.2d 164, 169 (4th Cir.1972) (two relevant considerations are the jury's statement that it cannot reach a verdict and the length of the jury's deliberations).

■ In *Arnold*, 566 F.2d at 1387, the court enumerated seven factors that should guide an appellate court's review of a district court's exercise of its discretion to declare a mistrial because of a deadlocked jury. These factors include:

(1) a timely objection by the defendant, (2) the jury's collective opinion that it cannot agree, (3) the length of the delib-

erations of the jury, (4) the length of the trial, (5) the complexity of the issues presented to the jury, (6) any proper communications which the judge has had with the jury, and (7) the effects of possible exhaustion and the impact which coercion of further deliberations might have had on the verdict.

*Arnold*, 566 F.2d at 1387.[10] With the exception of the first fact, *see supra* note 10, we believe that these factors can usefully serve as a general guideline for determining whether the district court abused its discretion in declaring a mistrial in the present case.

### III.

■ Absent the defendant's consent, when a judge believes that a jury is deadlocked, "[t]he most critical factor is the jury's own statement that it was unable to reach a verdict." *Arnold v. McCarthy*, 566 F.2d 1377, 1387 (9th Cir.1978). Therefore, before a judge declares a mistrial because of a deadlocked jury, he or she should question the jury, either collectively or individually, to determine whether further deliberations would be helpful. *See id.* (upholding a district court's finding of deadlock where judge asked the foreperson and the jury as a group whether there was any probability of reaching a verdict); *United States v. Medansky*, 486 F.2d 807,

---

**10.** Unlike the court in *Arnold*, however, we do not believe that the defendant's timely objection is just one factor to be considered in reviewing the propriety of a mistrial declaration. If a defendant requests or consents to its declaration, ordinarily a mistrial will not bar the defendant's reprosecution. *Jorn*, 400 U.S. at 485, 91 S.Ct. at 557. Only if the defendant was induced to request a mistrial by the prosecutor's or judge's bad-faith conduct or overreaching will the defendant's motion for a mistrial, or consent thereto, not act to presumptively remove any barrier to reprosecution. *Id.* If, however, the defendant neither requests nor consents to the mistrial, retrial is permitted only if there was manifest necessity for the mistrial. *Dinitz*, 424 U.S. at 600, 96 S.Ct. at 1076.

We agree with the defendants that their earlier mistrial motion does not constitute consent to the court's mistrial declaration because their motion was made on a different basis. *See Lovinger*, 845 F.2d at 744 (defendant's earlier mistrial motion could not constitute consent to

court's later mistrial declaration because it was based on different grounds and was merely perfunctory). The defendants moved for a mistrial as part of their objection to the court's decision to take verdicts for any count on which the jury was unanimous. The judge's eventual declaration of a mistrial, in contrast, was based on the jury's apparent complete deadlock. Thus, the mistrial declaration will bar the defendants' reprosecution unless there was manifest necessity for its declaration.

After the court declared a mistrial, defendant McNab moved the court to allow the jury to continue to deliberate until the end of the day. Defendant Farmer joined this motion. The government does not argue that the defendants' failure to interpose an immediate objection to the mistrial constitutes consent. Although we do not need to decide the issue, we note that it appears from the record that the spontaneous nature of the mistrial declaration may have prevented the defendants from raising a simultaneous objection.

812 (7th Cir.1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 886 (1974) (allowing retrial where the court questioned the foreperson but did not poll the jury on issue of deadlock). *But see United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034, 1043–44 (3rd Cir.1975) (retrial barred where judge asked the foreperson if there was any possibility of reaching a verdict but failed to inquire of the other jurors).

■■■ The jurors' notes to the court strongly indicated that they were deadlocked, and their inability to reach a unanimous verdict on any count for any of the defendants supported that conclusion. Therefore the judge appropriately determined that further deliberations would not be useful.[11] However, because the state of jury deliberations is ever-changing, prior evidence of deadlock is not always dispositive of the jury's present inability to reach a unanimous verdict. *United States v. Horn,* 583 F.2d 1124, 1129 (10th Cir.1978). Furthermore, when the record does not contain a statement by the jurors themselves that they cannot agree, review of the district court's exercise of its discretion is more difficult. Thus, while the record in this case amply supports the court's finding that the jury was deadlocked, it would have been preferable for the judge to have questioned the jurors themselves, either individually or collectively, on the issue of their ability to reach a verdict, rather than simply stating his own conclusion that further deliberations would be futile. *See United States v. See,* 505 F.2d 845, 851 (9th Cir.1974), *cert. denied,* 420 U.S. 992, 95

S.Ct. 1428, 43 L.Ed.2d 673 (1975) (the judge should specifically ask if further deliberations would help the jury overcome its current deadlock). The district court's failure to poll the jurors or to make other findings in accordance with the guidelines set forth above, however, is not necessarily fatal. *See Arizona v. Washington,* 434 U.S. 497, 517, 98 S.Ct. 824, 836, 54 L.Ed.2d 717 (1978) ("[n]o matter how desirable such procedural assistance may be, it is not constitutionally mandated").

The appellants contend that in reviewing the propriety of the judge's mistrial declaration we should not consider any of the notes the jurors sent to the court prior to December 23. They argue that the court's statements on December 21, which were in response to a question the government raised about the usefulness of further deliberations, in effect cleansed the record of all evidence of deadlock prior to that date. On December 21, the court correctly concluded that it was appropriate to allow the jury to continue to deliberate because they had not indicated on that date that they were at an impasse. This statement does not, however, expunge the record of all prior evidence of deadlock. A mistrial declaration and review thereof cannot occur in a vacuum. The judge's remarks on December 21 do not demonstrate that he conclusively determined that the jury was *not* deadlocked on that date; rather, his statements show only that he concluded that consideration of that issue should be suspended to allow the jury additional time for deliberation.[12] The jurors' notes and their inability to reach even a partial verdict

---

11. As part of the judge's effort to encourage the jury to continue deliberating effectively, the judge read them the *Silvern* instruction on two separate occasions (in addition to its inclusion in the final instructions to the jury). It is within the discretion of the district court to repeat this instruction even after it has been read to the jury as part of the final instructions. *United States v. Hamann,* 688 F.2d 507, 511 (7th Cir. 1982), *cert. denied,* 460 U.S. 1013, 103 S.Ct. 1255, 75 L.Ed.2d 483 (1983). The court's decision to read *Silvern* on both December 17 and December 18 appears to be quite unusual. In fact, we can find only one case in this circuit in which the *Silvern* instruction was repeated more than once. *See United States v. Peskin,* 527 F.2d 71,

85 (7th Cir.1975), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976) (jury given *Silvern* instruction twice).

12. It was the defendants who collectively objected to the judge's suggestion on December 21 that he poll the jury to determine if they were deadlocked. Because the jury did not send any notes to the court on December 21 that indicated that they were deadlocked, the court could not conclusively decide if they had reached an impasse on that date. In the absence of evidence from the jury itself that they could not reach a unanimous verdict, the court correctly allowed deliberations to continue.

provided the court with ample evidence that the jury was in fact deadlocked.

The length of the trial, length of the jury deliberations, and complexity of the issues are also important factors to be considered in reviewing the propriety of the mistrial declaration in the present case. The trial was complex and lengthy, involving seven defendants and multiple charges against each defendant. The case was tried for thirty-two days over an eight-week period. Starting on December 10, 1987, the jury deliberated for approximately thirty hours over thirteen days. Although the length of the jury's deliberation was not excessive considering the complexity and length of the trial, neither was it so insubstantial as to cast doubt on the correctness of the judge's mistrial declaration. *See Horn,* 583 F.2d at 1129 (mistrial improperly declared where district court allowed jury to deliberate for only one evening and one hour the next morning); *United States v. Gordy,* 526 F.2d 631, 636–37 (5th Cir.1976) (five and one-half hours of deliberations without a verdict did not demonstrate inability to agree); *United States v. Lansdown,* 460 F.2d 164, 169 (4th Cir.1972) (barring retrial where mistrial declared after only eleven hours of deliberation and in spite of jury's request for more time). The district court was clearly in the best position to evaluate these factors. *Arnold,* 566 F.2d at 1387.

A court must also consider the effects of the jury's possible exhaustion and the impact that coercing further deliberations might have had on the verdict. Requiring an already exhausted jury to continue to deliberate could coerce the jurors into accepting a verdict that they otherwise would not support. *Id.* In the present case the risk of a coerced verdict was particularly

strong. When the judge polled the jury on December 18 on the question of deadlock, several jurors indicated concern that they might be pressured into changing their positions simply for the sake of unanimity.[13] We cannot say that the court abused its discretion in declaring a mistrial in light of all of the foregoing factors, including the length of the jury's deliberations and the strong possibility that the jurors might be pressured to change their positions simply to reach a unanimous verdict.

In the present case there was substantial evidence indicating that the jury was deadlocked and that further deliberations would risk a coerced verdict; thus, there was manifest necessity for the declaration of a mistrial. We conclude that the district court did not abuse its discretion in declaring a mistrial. The double jeopardy clause of the fifth amendment therefore does not bar the government from reprosecuting these defendants.

## IV.

Finally, we believe it necessary to comment on the inappropriateness of some of the arguments that the appellants made in their brief and petition for rehearing. For example, the appellants asserted that the district court's mistrial declaration was "improperly motivated by the trial court's partiality for the government's case and by an excessive desire to assure conviction." Appellants' Brief at 30. The appellants, however, presented no evidence to support this and several other very serious allegations of impropriety and partiality on the part of the district court. We do not find acceptable accusations which impugn the integrity of the district court while lacking evidentiary support.

---

**13.** When the judge polled the jury on December 18 to determine if further deliberation would be helpful, one juror emphatically stated that he was not going to change his mind even if they deliberated until January. Another juror specifically indicated concern that some jurors might shift their position just to accommodate a verdict. In fact, this juror stated that "[w]e are at the point now where we have got individuals changing their—being pressured into changing their decisions." While another juror indicated

that "[t]he only way ... that we would come to a conclusion would be if somebody was to just go along with it on some points, just to go along on it, because on some of the issues, we are deadlocked...."

The risk of a coerced verdict was even more pronounced due to the timing of the deliberations—the next day was Christmas Eve. The jurors indicated on more than one occasion that they were concerned about the possibility of being required to deliberate on Christmas Eve.

Similarly, in their petition for rehearing of this court's initial denial of their motion for a stay, the appellants asserted that if this court affirmed the district court's mistrial declaration we would simply be bowing to "public political pressure." Appellants' Petition for Rehearing at 4. In arguing that a second trial would cause irreparable injury, the appellants claimed that "no court sitting in this political climate will reverse the conviction on the grounds that the second trial was barred on the grounds of double jeopardy." *Id.* at 2. Although the court can understand the discouragement counsel inevitably experienced at seeing a lengthy trial end in a mistrial, no amount of frustration can justify baseless attacks on the integrity of this court and the district court.

This case presents an important issue regarding the appropriate procedures district courts should follow when declaring a mistrial over a defendant's objection. Although the appellants made substantial arguments in favor of their position, the thrust of their arguments was diminished by their unfounded and disrespectful assaults against the federal courts. The tone and tenor of the appellants' arguments did a disservice to both the defense bar and the court. We strongly admonish counsel to refrain from such inappropriate and unsupported actions in the future.

### V.

Because we conclude that the district court did not abuse its discretion in declaring a mistrial in this case, the judgment of the district court is AFFIRMED.