

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-2008

# USA v. Gelean Mark

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1177

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Gelean Mark" (2008). *2008 Decisions.* Paper 862.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/862

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1177
_____

UNITED STATES OF AMERICA

v.

GELEAN MARK,

Appellant

_____

No. 08-1178
_____

UNITED STATES OF AMERICA

v.

DORIAN SWAN,

Appellant

_____

No. 08-1312
_____

UNITED STATES OF AMERICA

v.

KELVIN MOSES,

Appellant

_____

No. 08-1356
_____

UNITED STATES OF AMERICA

v.

VERNON FAGAN,

Appellant

_____

No. 08-1358
_____

UNITED STATES OF AMERICA

v.

WALTER ELLS,

Appellant

_____

Appeals from the District Court
of the Virgin Islands
(Crim. No. 2006-80)
District Judge: Hon. Curtis V. Gomez

_____

Argued May 8, 2008

Before: RENDELL, FUENTES, and CHAGARES, Circuit Judges.

(Filed: July 9, 2008)
_____

2

Jesse A. Gessin, Esq.
Asst. Federal Public Defender
P.O. Box 1327
St. Thomas, Virgin Islands 00804-1327
Counsel for Appellants


Delia Smith
Assistant United States Attorney
5500 Veterans Drive, Suite 260
St. Thomas, Virgin Islands 00802-6424
Counsel for Appellee

_____

OPINION OF THE COURT
_____


CHAGARES, Circuit Judge.

The defendants in this case were charged with conspiracy and possession with intent to distribute cocaine. After a lengthy jury trial and partial verdict, the District Court declared a mistrial as to the remaining charges and defendants. Because the District Court's declaration of a mistrial was supported by manifest necessity, we will affirm the court's order denying the defendants' motion to dismiss the indictment on double jeopardy grounds.

I.

On December 19, 2006, a federal grand jury charged Appellants/Defendants Dorian Swan (Swan), Gelean Mark (Mark), Vernon Fagan (Fagan), Walter Ells (Ells),

and Kelvin Moses (Moses) in a fourteen-count indictment. Count I charged conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846; Count II charged conspiracy to import cocaine in violation of 21 U.S.C. § 963; and Count XIV charged possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841.[1]

Defendants' jury trial began on September 5, 2007 and ended in a mistrial on October 3, 2007. The trial lasted about three weeks, and the jury was sequestered for deliberations, which began on September 26. On September 28, the third day of deliberations, the jury submitted a note informing the court that it had reached a partial verdict and could not reach a unanimous decision with respect to the remaining counts. The District Court informed the lawyers of the situation and asked for their input, noting that the court's inclination was to give the jury an Allen charge. Counsel for Moses asked if it was the Court's custom "to inquire of the jury, who is giving you a note saying that they cannot reach a unanimous vote, and ask something like, if you were to ask them to go back and return to deliberations, are they sure that it's not going to change, or would further deliberations be a waste of time?" Appendix (App.) 98. The District Court replied in the negative, explaining, "I would be poking into their deliberative process. I either give them an [Allen charge], or I don't." Id. Ultimately, defense counsel objected to an Allen charge this early in deliberations; nevertheless, the court gave the jury the charge.

---

[1]     The District Court dismissed Counts III through XIII on a judgment of acquittal; therefore, this appeal addresses only Counts I, II, and XIV.

4

Soon after this instruction, an incident occurred amongst the jury, with one juror refusing to deliberate due to comments between other jurors regarding a defendant. Deliberations were not scheduled to occur the following day, September 29. When deliberations resumed on September 30, and against defense counsel's objections, the District Court sealed the proceedings for a *voir dire* of only the juror who submitted the note refusing to deliberate. The next day, October 1, the jury returned a partial verdict of guilty with respect to Mark and co-defendant Henry Freeman on Count I. The court polled the jurors individually on this verdict and instructed the jury to return to its deliberations on the remaining counts. Two hours later, the jury sent another note to the court stating that the jurors were unable to reach a unanimous verdict on any other matter they were considering. The District Court again consulted with counsel and then brought the jury back into the courtroom and told the jurors, "I received your note, and the Court appreciates the work you've done. I know you've worked long and hard on this matter. And I know that sometimes there is, there is a, you come to a position where you simply can't reach unanimous decisions on certain matters. The Court appreciates all your effort in trying to reach unanimity notwithstanding that." App. 158. The jury then left the courtroom to deliberate on the drug amounts under the Count I guilty verdict. The Court held proceedings regarding the forfeiture issue in this case before turning to the matter of the remaining defendants. Because the District Court had already given an Allen charge, such an instruction was no longer an option. The court conferred with defense counsel,

5

who suggested no alternatives on how to proceed, concluding that "The Court should rule, Your Honor." App. 173. In fact, Moses's lawyer indicated that "the only alternative [he saw] under the rules is a mistrial." App. 176. The District Court made a manifest necessity determination, stating:

> The jury has been listening to evidence in this case for the better part of three weeks, three-plus weeks. They've been deliberating for close to one week.
> They sent one note, in which they indicated they had reached unanimity on some matters, and they were unable to reach unanimous decision on other matters.
> They have, they were subsequently instructed that they were to continue deliberating. That, I believe, was on Friday.
> They have since deliberated for most of today, which is Monday. They deliberated on the weekend, on Sunday, and whatever remained on Friday when I gave the instruction.
> Under those circumstances, the Court finds there is manifest necessity for a mistrial as to those matters and those defendants on which the defendants—or rather the jury could not reach a unanimous decision.
> So the Court finds there is manifest necessity.
> A specific ruling on the mistrial, I'll issue a written opinion on that.

App. 176-77.

Counsel for Mark objected to the manifest necessity finding, arguing that the court gave a premature Allen charge. Retrial was scheduled for January 22, 2008. On January 17, 2008, Swan, joined by the other Defendants, filed a motion for dismissal of the indictment based on double jeopardy. The District Court denied the motion and Defendants filed this consolidated appeal. On January 22, after jury selection but before the jury was sworn, this Court entered a temporary stay of retrial. We have jurisdiction to review this appeal pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. See

6

Abney v. United States, 431 U.S. 651, 659 (1977); United States v. Venable, 585 F.2d 71, 74 (3d Cir. 1978).

## II.

The Double Jeopardy Clause of the Fifth Amendment guards against multiple trials or punishments for the same offense and protects a defendant's right to have his trial completed by a particular jury. Wade v. Hunter, 336 U.S. 684, 689 (1949). In limited circumstances, however, a second trial after mistrial is permitted, including where manifest necessity justifies ordering a mistrial. United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824). Reprosecution is permitted when a jury's inability to agree upon a verdict necessitates a mistrial. Id.

Defendants contend that manifest necessity did not justify a mistrial in this case. The question of whether manifest necessity existed to support the District Court's declaration of a mistrial is a mixed question of law and fact over which we exercise plenary review. See United States v. Rivera, 384 F.3d 49, 55 (3d Cir. 2004). A district court enjoys broad discretion to declare a mistrial where a jury is genuinely unable to reach a verdict. See Arizona v. Washington, 434 U.S. 497, 505 (1978); Crawford v. Fenton, 646 F.2d 810, 817 (3d Cir. 1981); see also United States ex rel. Webb v. Court of Common Pleas, 516 F.2d 1034, 1040 (3d Cir. 1975) (stating that "the genuine inability of the jury to reach a unanimous verdict within a reasonable period constitutes 'manifest necessity' for discharge of the jury and retrial of the accused"). Still, a district court may

7

declare a mistrial without barring reprosecution "only in extraordinary circumstances." United States ex rel. Russo v. Superior Court of New Jersey, 483 F.2d 7, 13 (3d Cir. 1973).

There are no "hard and fast rules" regarding what conditions constitute manifest necessity. Russo, 483 F.2d at 13. Instead, this determination must be based on the particular facts and circumstances of the case giving rise to the mistrial declaration. See Crawford, 646 F.2d at 817. Accordingly, we must determine whether the facts of record in this case establish that the District Court "exercised the 'scrupulous' and 'extraordinary' care that the Supreme Court has mandated for the protection of a defendant's constitutional right to be spared repeated attempts to convict him" before declaring a mistrial. Webb, 516 F.2d at 1043. Factors to be considered include: the length of trial and deliberations, the complexity of the issues, the jury's communications to the judge (including whether it states that it is unable to agree or is hopelessly deadlocked), the judge's polling of the jury, the parties' opportunity to comment on the propriety of a mistrial, and the judge's prudent consideration of reasonable alternatives. See, e,g., United States v. Byrski, 854 F.2d 955, 961 (7th Cir. 1988) (listing several factors); United States v. Gordy, 526 F.2d 631, 635-36 (5th Cir. 1976) (same). Based on the record before us, we conclude that manifest necessity justified the District Court's mistrial declaration.

First, the jury's communications with the trial judge clearly indicated a deadlock. The jury's note of September 28 stated that "[t]here's a partial verdict [as to Count 1] . . . . [and] as to the other matter, the jury has said that they cannot come to a unanimous decision." App. 98. Similarly, on October 1, the District Court reported, "We have another note. In essence, the jurors are unable to reach a unanimous decision on any other matter that they're considering."[2] App. 148.

Furthermore, the District Court consulted with counsel and canvassed alternatives to mistrial as required by Federal Rule of Criminal Procedure 26.3 and this Court's caselaw. See Fed. R. Crim. P. 26.3 (providing that "[b]efore ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives."); see also United States v. Tinney, 473 F.2d 1085, 1089 (3d Cir. 1973) (observing that a trial judge "must seek out and consider all avenues of cure to avoid trial abortion" (citation and quotation omitted)). When the District Court received the jury's note of September 28, it informed the lawyers of the situation, asked if "Counsel want to be heard on that?", and gave the attorneys the opportunity to respond. App. 91.

---

[2]    In Webb, this Court held that double jeopardy barred retrial after a mistrial because manifest necessity did not support the district court's mistrial declaration. The Webb jury did not submit any notes to the district court. Instead, "the judge on his own initiative . . . asked the jury to return to the courtroom" and inquired of the foreperson whether there was any hope of arriving at a verdict. See 516 F.2d at 1043 ("the impetus for a mistrial was provided solely by the judge rather than by the jurors"). By contrast, in the matter at hand, the deadlock issue was raised by the jury itself in two different notes indicating that it could not reach a unanimous verdict.

Likewise, before making its manifest necessity finding, the court gave counsel the chance to be heard. See App. 171-176 (asking, for example, "Do you think there is manifest necessity for, to discharge this jury and declare a mistrial as to your client?"). Defendants argue that the District Court erred by dismissing the jury as to those defendants against whom no verdict had been reached and waiting until later in the day to make a finding of manifest necessity. They contend that because the District Court advised the jury that it would no longer be deliberating on the remaining defendants and counts without making a concurrent manifest necessity finding it "should be precluded from making such a finding after dismissal." Appellant Reply Br. at 8. Defendants offer no support for this assertion, nor did they raise this objection when the District Court asked for suggestions before entering its manifest necessity determination. This was not a case where the court's mistrial declaration caught counsel by surprise.[3]

While "there is no uniform minimum period during which a jury must deliberate before the court may declare a hung jury," Webb, 516 F.2d at 1044, Defendants assert that the lengthy trial involving complex issues, the jury's sequestration for deliberations,

---

[3]     Defendants assert that the District Court gave a premature Allen charge on September 29 and by the time the court consulted defense counsel for alternatives on October 1, "the only option left was rule that the jurors continue to deliberate or declare a mistrial . . . ." Appellant Reply Br. at 7-8. The jury, however, had indicated its lack of unanimity in its September 28 note, and it was within the District Court's discretion to give the Allen charge then. See, e.g., United States v. Graham, 758 F.2d 879, 884 (3d Cir. 1985) ("The length of time a jury may be kept for the purpose of deliberation is a matter within the discretion of the trial judge"). See also United States v. Martinez, 446 F.2d 118, 120 (2d Cir. 1971) ("[W]e will not place an arbitrary time limit on how long a jury must deliberate before an Allen charge is appropriate.").

10

and the jury's relatively short time spent deliberating fail to support the District Court's declaration of a mistrial.[4] We agree that this was not a situation in which the jury's physical condition or protracted deliberations necessitated a mistrial. Cf. Crawford, 646 F.2d at 819 (finding manifest necessity where "jurors were fatigued, frustrated . . ., unable to concentrate, unwilling to guess, and persistent in their demands to return home and be relieved from their service as jurors.") Nevertheless, the jury's communications to the judge, combined with the District Court's discussions with counsel regarding a mistrial and potential alternatives, weigh in favor of a manifest necessity finding. Therefore, we will affirm the District Court's decision.

III.

For the foregoing reasons, we will affirm the decision of the District Court.

---

[4] Defendants also argue that the District Court failed to poll the entire jury or question the foreperson concerning the deadlock, and they urge this Court to mandate that trial judges poll the foreperson and then each juror before declaring a mistrial due to manifest necessity. See Appellant Reply Br. at 3. We decline to adopt such a rule here, as we agree with the Court of Appeals for the Seventh Circuit that, "[w]hile it is preferable that a jury be polled before dismissal [due to a mistrial], a trial judge is not under an obligation to conduct such a poll." Escobar v. O'Leary, 943 F.2d 711, 178 n.4 (7th Cir. 1991). Polling is only one of several factors to be considered in ascertaining whether manifest necessity exists in a particular case. See Webb, 516 F.2d at 1046 ([t]he trial judge *may* question the jurors") (emphasis added).