HARLINGTON WOOD, Jr., Senior Circuit Judge.
 

 This appeal arises from the retrial of a bank robbery charge which the first time ended in a hung jury. Jurisdiction, double jeopardy, and evidentiary issues are raised.
 

 In 1990 the defendant, John J. Powers, was charged in a two-count indictment with separate violations of Title 18, U.S.C., Section 2113(a); bank robbery charges. Count I charged the defendant with robbing Bank One, Indianapolis, Indiana, of about $1,000 in June 1988, and Count II with robbing the Union Federal Savings Bank, Indianapolis, Indiana, in October 1988 of about $900. A jury rendered a verdict of not guilty on the second charge and was unable to reach a verdict on Count I. The jury was returned for further deliberations on Count I. When after one hour and fifteen minutes the jury was still unable to reach a verdict, the judge declared a mistrial. The following month the government filed a superseding indictment charging the defendant with the same violation as in the original Count I, except that the superseding count- narrowed the charge to a taking by intimidation only and omitted the additional alternative elements of by force and violence.
 

 •In response the defendant filed a motion to dismiss claiming a violation of his Fifth Amendment rights against double jeopardy and upon its denial filed a notice of appeal in this court. Shortly thereafter the defendant filed a motion to stay the proceedings in the district court pending outcome of the appeal, which was denied by the district court. In this court the government filed a motion to dismiss the appeal for lack of jurisdiction to which the defendant did not respond. The defendant did respond with an additional appeal of his denial to stay the proceedings. Trial by jury on the superseding indictment began during the pen-dency in this court of those notices of appeal. The defendant was found guilty and sentenced to sixty-six months imprisonment to be served consecutive to sentences being served by the defendant for another bank robbery and attempted bank robbery in Florida. After the district court denied a motion to vacate the conviction on the basis that the district court had no jurisdiction after the filing of the notices of appeal, this appeal followed. It has been consolidated with defendant’s prior appeal taken before trial.
 

 Factual Summary
 

 A brief summary of the bank robbery facts is primarily necessary for the third issue regarding evidentiary rulings. One bank robbery, Bank One in Indianapolis, is directly charged in the indictment, but three other bank robberies also need to be examined — one in Michigan in 1988, one in Florida in 1989 and one attempted in Florida in 1989. All three resulted in the conviction of the defendant. These additional convictions were admitted only for the purposes of identity and to show a purportedly common scheme or plan under the Federal Rules of Evidence, Rule 404(b).
 

 
 *356
 
 The bank teller for Bank One in Indianapolis testified about that charged bank robbery. The robber handed her a holdup note and she responded by turning over some money to him. The bank camera was automatically activated. The robber advised her he was wearing a police scanner. At trial she could not identify the defendant as the robber, but she did describe his appearance. He was wearing dark pants, light shirt, tweed suit jacket, white hat with a tan band, wire-rimmed, tinted glasses and was carrying a briefcase. He had a thin, blondish-brown mustache and little scars or marks on his cheeks. Five other persons who were closely acquainted with the defendant during that time were able to identify the defendant as the person in the bank surveillance photographs.
 

 One witness testified she was acquainted with the defendant because her husband had worked for the defendant in a construction business and she had seen the defendant on a daily basis. Her recognition of the defendant in the photos was based on his face, hair, height and profile. She also recognized the hat the defendant was wearing as the type she had seen the defendant wear. She also testified that the defendant on one occasion had attempted to disguise his appearance by dying his hair, mustache and eyebrows.
 

 The witness’s husband, who worked for the defendant, testified that the defendant carried a police scanner. He too was able to identify the person in the bank photographs as the defendant based on his profile, build and face.
 

 A teenage witness, who knew the defendant by an alias, testified that he saw the defendant almost every day for a three-or-four-month period about that time because the defendant was living with the father of a friend of his and they socialized together. This witness examined the bank photos and explained he recognized the defendant by his face, stance, style and the way he acted. He also noticed that the defendant was wearing a type of necklace in the photo that he knew the defendant to wear, and that the defendant had no job but always seemed to have a lot of money. He further testified that the defendant met a woman at the time, also a witness, and then left with this woman for several weeks. After they returned the- witness saw the defendant take money from a blue bank bag he had under the seat of his car.
 

 The next witness was the friend of the teenage witness, whose father the defendant had lived with for awhile. He too saw the defendant about every day and knew him by an alias. He identified the defendant in the bank photographs because of the defendant’s face, hat and stance.
 

 The final identification witness was the woman whom the prior testimony indicated met the defendant and left town with him for a couple of weeks. She also knew him by his alias. The defendant, she explained, claimed to be working for a construction company. Each day he generally wore suit, tie and sometimes a hat. She described his hats as dress hats, wide-brimmed with a band. He also customarily carried a brief case. She also mentioned a gold chain he wore around his neck and his sun glasses. The witness and the defendant made a trip together, and on their return she noticed the defendant had a zip-type money bag with a bank name imprinted on it which contained a large number of large-denomination bills. The defendant slept with this money bag under his pillow. She also identified the defendant in the bank photos by his clothes, jewelry, suit, hat, face, slouch and bend of his knee. She likewise testified the gold chain and ring visible in the bank photographs were similar to those worn by the defendant.
 

 Against that background of the bank robbery for which the defendant was on trial, the government offered evidence of the conviction of the defendant in the three other bank robberies, one in Michigan in 1988 and two in Florida in 1989, one being an attempt. This evidence was admitted under Rule 404(b) of the Federal Rules of Evidence and the jury was instructed about the limitations on its use.
 

 Two bank tellers from the Michigan bank testified about the circumstances of that robbery and described the defendant as having a mustache, wearing a light-colored
 
 *357
 
 suit, a white “Panama” hat with a dark-band, wire-rimmed glasses and carrying a brief case. One of the teller witnesses was able to identify the defendant in the courtroom.
 

 The bank episodes in Tampa, Florida, both occurred on the same day in February 1989. In the attempt to rob the Glendale Federal Bank the defendant left after giving the teller his note while the teller was briefly away from the window. The bank camera was activated showing the defendant wearing a suit, dress-type hat, sun glasses and possibly a wig, false beard and mustache. A teller from the other bank, Key Bank in Tampa, testified to being given a similar note as used at the Glendale Bank and described the robber’s appearance as did the witness from the Glendale Bank.
 

 A local detective in Tampa who conducted a search of the defendant’s residence found make-up and disguise materials, blue suit, scanner and other items, including money from the Key Bank and the hat described by the bank witnesses. The defendant consented to be interviewed acknowledging his past troubles and anticipated federal charges.
 

 The facts of what occurred in the first trial to cause the mistrial and give rise to the double jeopardy argument will be discussed when considering the merits of that issue:
 

 Jurisdiction of the District Court and Double Jeopardy
 

 The jury failed in the first trial to reach a verdict on one count of the original indictment charging the robbing of Bank One in Indianapolis. The trial lasted about two and one-half days and was then submitted to the jury on the morning of February 28, 1991. Following about nine hours of deliberation, the jury found the defendant not guilty of Count II, which charged robbery of the Union Federal Savings Bank in Indianapolis, but advised that it could not reach a unanimous verdict on the Bank One charge. The district judge inquired if the jury felt it might be able to arrive at a verdict on the Bank One charge if returned to the jury room. The foreperson replied that she didn’t think so, but that anything was possible, she didn’t know. The district judge then noted it was 8:00 p.m. and suggested the jury deliberate for another hour. A little over an hour later the jury was brought back and the foreperson, in answer to the judge’s inquiry if the jury had reached a verdict, responded that the jury could not come to a decision and was still not unanimous. The judge then noted that the jury had had the case for about ten hours and had been unable to reach a verdict, and declared a mistrial.
 

 The following month the grand jury returned a superseding indictment related to Bank One, and a new trial date was set. The defendant filed a motion to dismiss oh double jeopardy grounds, and after that was denied the defendant filed a notice of appeal. The government responded with a motion to dismiss the appeal for lack of jurisdiction to which the defendant did not respond although requested to do so by this court. That motion has not been ruled on. Next the defendant filed in the district court a motion to stay the new trial pending resolution by this court of the defendant’s appeal of the denial of his motion to dismiss, which was likewise denied and was followed by defendant’s second appeal. Nevertheless, the jury trial proceeded after the defendant was unsuccessful in opposing the government’s motion in limine permitting the use of evidence of the three other bank convictions in Michigan and Florida. The defendant was found guilty.
 
 [1]
 
 The defendant then filed a motion to vacate the judgment of conviction on the basis that the district court lacked jurisdiction to proceed to trial with defendant’s notices of appeal still pending in this court. The denial of that motion by the district court resulted in this appeal.
 

 The defendant basically questions the jurisdiction of the district court to proceed
 
 *358
 
 to trial on the superseding indictment after the defendant’s appeal to this court of the denial of the defendant’s motion to dismiss on double jeopardy grounds. The defendant viewed that denial as immediately ap-pealable as an interlocutory appeal under Title 28, Section 1291. The defendant relies on
 
 Abney v. United States,
 
 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).
 

 Abney
 
 is helpful to the defendant as far as it’ goes. The Court held that a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds was a final decision under 28 U.S.C. § 1291, and thus immediately appealable. The Court noted that the double jeopardy claim raised was entirely independent of the defendant’s guilt or innocence and fell within the
 
 Cohen
 
 exception.
 
 Cohen v. Beneficial Indus. Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Beyond the basic premise that such double jeopardy pretrial orders are appealable some refinements have developed.
 
 Abney
 
 was not a case involving the declaration of a mistrial when the jury was unable to reach a verdict and did not discuss the matter of the district court’s jurisdiction to proceed during the interlocutory double jeopardy appeal.
 

 This court has considered some of the additional aspects of the interlocutory appeal doctrine in
 
 United States v. Cannon,
 
 715 F.2d 1228, 1231 (7th Cir.1983),
 
 cert. denied,
 
 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984). We specifically held that an appeal from the denial of a defendant’s motion to dismiss on double jeopardy grounds was insufficient to divest the district court of jurisdiction if the motion was frivolous or failed to raise a colorable claim of double jeopardy. The defendant realizes that the district judge may declare a mistrial and discharge a genuinely deadlocked jury and proceed to a retrial, but disputes that there was an appropriate basis in this case for the district court’s declaration. It is argued there was no “manifest necessity” for the mistrial, the defendant did not consent to the mistrial, and thus the appeal is not frivolous and does not fail to raise a colorable claim.
 

 The defendant relies on
 
 Lovinger v. Circuit Court of 19th Judicial Circuit,
 
 845 F.2d 739, 745 (7th Cir.1988),
 
 cert. denied,
 
 488 U.S. 851, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988), to support the argument that without the defendant’s consent there must be a “manifest necessity” to declare a mistrial. Judge Flaum writing for the panel carefully and fully explained the standards for mistrial in face of a double jeopardy argument. That case was a habeas corpus proceeding following the declaration of a mistrial in a state criminal proceeding testing the state’s expressed intention to retry the defendant. There was no jury unable to reach a verdict. The mistrial declaration occurred in a bench trial resulting from the trial judge’s frustration with the inept way the state was trying to prosecute the case.
 

 The phrase “manifest necessity” was first enunciated by Justice Story in
 
 United States v. Perez,
 
 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), and remains the standard. Later in
 
 United States v. Jorn,
 
 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971), it was explained that the doctrine of manifest necessity is satisfied only when “a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.”
 
 Jom,
 
 however, is an unusual case. The defendant was indicted on an income tax charge which was tried by a jury before Judge Ritter, the then well-known Chief Judge of the District of Utah. When the first government witness was called, Judge Ritter, prior to examination of the witness, expressed concern with the constitutional right of the witness not to incriminate himself and, being dissatisfied with the government responses to his concern, aborted the trial to permit the government witnesses to confer with their own private attorneys. When the case was later set for retrial Judge Ritter dismissed the case on the grounds of former jeopardy. The Supreme Court barred retrial.
 
 [2]
 

 
 *359
 
 The defendant also cites
 
 United States v. Byrski,
 
 854 F.2d 955 (7th Cir. 1988), to support his argument that the length and complexity of the present trial demanded a longer time for the jury to deliberate. Those are factors to be considered but
 
 Byrski
 
 was complex and lengthy involving seven defendants, multiple charges and was tried for thirty-two days over an eight-week period. That jury deliberated approximately thirty hours over thirteen days. In denying a double jeopardy defense there were also other factors the court considered. It was noted that it would have been preferable for the judge to have first questioned the jurors individually or collectively, but that was viewed as preferable, not fatal. Defendant in the present case also argues that the judge did not poll the jury. However, when the judge first questioned the jurors about their inability to reach a verdict the foreperson replied she did not think the jury could, but that it might be possible. When a little over an hour later the foreperson again advised the judge that they could still not come to a decision, the judge declared a mistrial. It would perhaps have been preferable if the judge, as suggested in
 
 Byrski,
 
 854 F.2d at 962, had questioned the jurors, individually or collectively, but what happened in this case was adequate. It was a short, routine, one-defendant, bank robbery case only complicated by the use of Rule 404(b) evidence, to be discussed later. Defendant counsel’s arguments that it was a sufficiently long and complicated case requiring more time to deliberate does not make it so. The proof of guilt in this record looks more than adequate. Upon retrial we noted that the superseding indictment omitted that part of its original charge alleging by force and intimidation. It may have been believed by the government that the factual circumstances of the defendant using a note, not a gun, was what was responsible for the failure to reach a verdict the first time. With that omitted, it was then easier for the second jury.
 

 This issue is answered by
 
 Richardson v. United States,
 
 468 U.S. 317, 326, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984), where the Court states, “a trial court’s declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected. The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate when the jury is discharged because it is unable to agree.”
 

 In the present case the trial judge when declaring a mistrial did not use the words “manifest necessity,” but they are neither magic nor necessary when sufficient justification appears in the record. The trial judge need not articulate on the record, as helpful as it could be, those factors on which he relied in the informed and deliberate exercise of his discretion.
 
 Arizona v. Washington,
 
 434 U.S. 497, 516-17, 98 S.Ct. 824, 835-36, 54 L.Ed.2d 717 (1978).
 

 “There is no amount of minimum time the jury must spend in deliberation before a mistrial can be declared. This factor is best left to the determination of the trial judge who was most aware of the circumstances of the trial.”
 
 Arnold v. McCarthy,
 
 566 F.2d 1377, 1387 (9th Cir.1978).
 

 After examining the law and the facts of this case, it is clear that the trial judge was not just in a hurry to get home that night, as suggested, but gave the jury ample time considering the particular circumstances of this case. Even after given additional time for deliberation there was still no unanimity. No optimism had been evidenced by the foreperson. The trial judge could have first consulted counsel or considered the alternative of additional
 
 *360
 
 time, but this record does not suggest that the trial judge did not carefully exercise his discretion. Moreover, it was so clearly a hung jury and this case so routine as to make the appeal of the trial court’s denial of the defendant’s motions to bar retrial without hope of success. That being so, under our holding in
 
 Cannon,
 
 715 F.2d at 1231, there was no need to prolong deliberations for the sake of appearances on appeal. Had the judge sent the jury back for additional deliberations and a guilty verdict had resulted the defense cry would likely be now that the judge had forced the jury into a guilty verdict when it was obvious they were not disposed to reach a verdict. We intend no criticism of defense counsel, however, for this effort.
 

 There was no double jeopardy violation and the district court was not deprived of jurisdiction by the hopeless notices of appeal. We now move to the evidentiary ruling.
 

 Evidentiary Ruling
 

 The facts and rulings admitting evidence of the other bank robberies under Rule 404(b) have already been set forth.
 
 See
 
 Fed.R.Evid. 404(b). We consider only whether there was reversible error in so doing and find none.
 

 It is the defendant’s argument that the other bank robberies were not similar enough to be of “signature quality,” and that the slight probative value was substantially outweighed by the danger of unfair prejudice showing that the defendant was an experienced bank robber. The government responds that the Michigan and Florida bank robberies, both committed and attempted, were properly admitted under the rule to serve as proof of identity and of a common scheme or plan, or as the district judge labeled it, modus operandi.
 

 Rule 404(b) of the Federal Rules of Evidence provides that evidence of other crimes, wrongs, or acts may be admissible to show “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” The parties agree that our review of evidentia-ry admissions is on an abuse of discretion standard. In
 
 United States v. Zapata,
 
 871 F.2d 616, 621 (7th Cir.1989), we repeated the applicable standard to be “that the district court’s ‘[djiscretion, when exercised, will rarely be disturbed,’ ... and that we shall ‘reverse a decision of the trial court only for abuse of discretion.’ ” (Citations omitted.)
 

 The defendant argues that the other crimes’ evidence was not needed by the government “because the government had direct evidence of the charged offense, to wit: photographs and eyewitnesses” and because the “other acts” had only slight probative value which was substantially outweighed by prejudicial impact. This “need” argument is questioned in
 
 United States v. Leight,
 
 818 F.2d 1297, 1303 n. 3 (7th Cir.1987),
 
 cert. denied,
 
 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987), where Judge Cudahy cautions that “a party challenging the 404(b) evidence might find itself having to argue the difficult position that the case against it was so overwhelming that the evidence should have been ruled out.” That approach could also lead to a harmless error analysis.
 

 The standard used for the admission of other crimes evidence was set forth in
 
 United States v. Zapata,
 
 871 F.2d at 620:
 

 To determine if such evidence is admissible, the district court must engage in a four-pronged analysis and evaluate whether (1) the evidence is directed toward establishing a matter in issue other than the defendant’s propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.
 

 This is the standard earlier set forth by the court in
 
 United States v. Shackleford,
 
 738 F.2d 776 (7th Cir.1984), except that prong Three in
 
 Shackleford
 
 required a clear and convincing standard, but subse
 
 *361
 
 quently in
 
 Huddleston v. United States,
 
 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988), the Supreme Court lowered the standard as set forth above.
 

 The -government raised its other acts evidence prior to trial by a motion in limine seeking a pretrial order permitting the admission of that evidence under Rule 404(b). That motion ,set forth the evidence and justified its use for purposes of proving identity, scheme and plan (or “modus oper-andi”). The motion was allowed and the parties were advised. The defendant complains in his brief, however, that he was not given prior notice of the government’s intention to use the 404(b) evidence. That argument is baseless in view of that pretrial ruling.
 

 The defendant also attacks the evidence on the basis that there are no striking similarities among the robberies for identification purposes or “modus operandi.” To make the point the defendant has submitted a handy chart listing each bank robbery separately and briefly comparing the identity and “modus operandi” evidence in various categories from hair to clothes, to brief case to teller notes. The bank robberies and the attempt are not in all respects a mirror image as projected by a series of different witnesses with varying perceptions on various occasions, but there are sufficient common threads in all the evidence. Not every bank robber can be expected each time he robs a bank to be entirely original in his “modus operandi,” nor entirely consistent. The evidence is not likely to be and is not required to be so individual as a person’s actual own written signature practiced many times. The “signature quality” description mentioned in
 
 United States v. Connelly,
 
 874 F.2d 412, 418 (7th Cir.1989), is generally helpful. It appears to be attributed to
 
 Shackleford
 
 but
 
 Shackleford
 
 does not, however, state the test in “signature quality” terms.
 
 Shackleford
 
 does require “ ‘a singular strong resemblance to the pattern in the offense charged.’ ”
 
 Shackleford,
 
 738 F.2d at 783 (citation omitted). Also as stated in
 
 United States v. Hudson,
 
 884 F.2d 1016, 1021 (7th Cir.1989), the evidence must be “sufficiently idiosyncratic to permit an inference of pattern for purposes of proof.” (Citation omitted.) This emphasizes that the “focus of the
 
 Shackleford
 
 analysis .is not on the dissimilarities between the charged offense and the other acts evidence, but on their common characteristics.”
 
 Connelly,
 
 874 F.2d at 418. We review the questioned evidence with these principles in mind however they are stated.
 

 The defendant’s hat is one place to make a comparison. In all the bank robberies here involved, or the attempt, the defendant wore a hat, not the common ski mask or stocking mask. The hat was described in the different circumstances by different witnesses as white, Panama, gray or grayish, very similar descriptions. An FBI agent testified the most common bank robbing disguise was the ski mask or stocking-mask, but a hat alone could not meet the test. In addition, however, the defendant in each instance wore a suit and carried a brief case, not some informal attire. Similar typewritten notes in size, content and style were given to the tellers. In each instance the defendant wore glasses, sometimes described as wire-rimmed and tinted or sun glasses. The defendant was described in each instance as wearing a mustache, real or false. The defendant concedes that these details which, all occurred within a reasonably related time period do appear similar on the surface. Some of the descriptions varied as might be expected, but the district judge was there, heard it all, and in the exercise of discretion admitted the 404(b) evidence. Under our standards of review we defer to him and his judgment, and we see no abuse of that discretion.
 

 In addition, the district judge instructed the jury each time 404(b) evidence was admitted and again in his final instructions about the limited use permitted to be made of that evidence. Defendant does not quarrel about the content of the instructions. There is nothing to suggest the jury disregarded the judge’s instructions.
 

 This type of evidence is always prejudicial to the defendant, but when in this case it is balanced against its legitimate uses,
 
 *362
 
 and limited by the court’s instructions, the prejudice is outweighed by. its probative value.
 

 The guilt was fairly and fully established. We find no error.
 

 Affirmed.
 

 [1]
 

 . Defendant was sentenced to a sixty-six-month term to be served consecutively with the Florida bank robbery conviction.
 

 [2]
 

 . In dissent Justice Stewart joined by Justices White and Blackmun, 400 U.S. at 489, 91 S.Ct. at 559, mentioned that it is commonly accepted that when the jury cannot reach a verdict the
 
 *359
 
 trial judge may proceed on his own initiative even over the objection of the defendant and declare a mistrial without double jeopardy problems. The dissent cited
 
 Wade v. Hunter,
 
 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), involving a court-martial in the Third Army then advancing rapidly in Germany during World War II. The case had begun, but because of the tactical situation the commanding general terminated that proceeding. It was begun again before a different court-martial convened by the Fifteenth Army which was further removed from the front. Conviction resulted and was affirmed in spite of a double jeopardy plea.