UNITED STATES of America, Plaintiff,

v.

Robert H. BAILIN, et al., Defendants.

No. 89 CR 668.

United States District Court,
N.D. Illinois, E.D.

Jan. 22, 1993.

On Motion for Stay Jan. 29, 1993.

Daniel Gillogly, Lisa Huestis and Dean Polales, Asst. U.S. Attys., Chicago, IL, for U.S.

Joseph J. Duffy, Schiff, Hardin & Waite, Robert M. Stephenson, Alan D. Blumenthal, Allan A. Ackerman, Charles B. Sklarsky, Jenner & Block, Jeremy D. Margolis, Altheimer & Gray, David Stetler, McDermott, Will & Emery, Richard L. Manning, James Streicker, Chicago, IL, Robert L. Gevirtz, Northbrook, IL, for defendants.

**1.** Two defendants who were previously acquitted of all charges are also named as co-conspirators.

**2.** One count of obstruction of justice is also still pending. That count has been severed out for a separate trial. A motion to dismiss that count will be ruled upon separately.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

This case presently involves 10 defendants charged in approximately 80 counts. The offenses all concern trading of yen futures at the Chicago Mercantile Exchange. Four defendants are charged with a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), but all 10 defendants as well as others who have previously pleaded guilty to charges are named as co-conspirators.[1] Two of the defendants are each charged with one count of a substantive violation of RICO. There are also charges of mail fraud and wire fraud, and various violations of the Commodity Exchange Act ("CEA"). Trial on the remaining counts is set for February 8, 1993.[2] Presently pending are a number of motions of the government and defendants.

Following a lengthy trial on almost 200 counts, a jury returned verdicts of not guilty on approximately two-thirds of those counts and hung on the counts that remain to be tried. In an order dated June 26, 1991, it was held that double jeopardy did not bar the retrial of any of the remaining counts, but that the government was estopped from again seeking to prove any of the acquitted counts constituted RICO predicate acts. One defendant and the government appealed and the Seventh Circuit affirmed. *United States v. Bailin,* 977 F.2d 270 (7th Cir.1992) (*"Bailin"*). Still unresolved is the question of whether evidence of the acts charged in the acquitted counts can be presented by the government at the second trial. *See id.* at 282 & n. 19. The government contends that such evidence is admissible as proof of the RICO conspiracy, proof of a scheme to defraud, or as other acts evidence under Fed. R.Evid. 404(b). In its motion for a pretrial ruling to admit certain evidence, the government summarizes the evidence of acquitted counts and other presently uncharged transactions that it intends to present at trial.[3]

**3.** Evidence regarding transactions that were the basis of charges on which defendants have been acquitted will be referred to as "acquitted evidence." Evidence regarding transactions that have never been the basis of charges against a remaining defendant will be referred to as "uncharged evidence."

■ The first issue to be addressed is the argument that the government is precluded from prosecuting the remaining counts. Count 2 of the indictment describes defendants' alleged scheme to defraud. These allegations are incorporated into all the mail and wire fraud counts of the indictment.[4] It is contended that the jury's finding of not guilty on Count 2 constitutes a finding that the alleged scheme to defraud does not exist and therefore bars further prosecution of the remaining counts.[5] All the mail and wire fraud counts incorporate the same scheme to defraud. Count 2, however, alleges that particular conduct involving a particular transaction constituted mail fraud by defendant Sidel that was part of the scheme to defraud. A finding of not guilty on Count 2 did not have to be based on a finding that the overall scheme to defraud did not exist; it could have been based on a finding that another element of mail fraud was missing for that particular mailing. *See Bailin,* 977 F.2d at 281–82. Therefore, the not guilty verdict on Count 2 is not a sufficient basis for applying double jeopardy or estoppel to dismiss the remaining counts against Greenfield or the remaining mail and wire fraud charges against the other defendants.

■ In *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), the Supreme Court clarified the standard for applying collateral estoppel in a criminal trial following a prior acquittal in a separate trial or separate case. The Supreme Court clarified that the issue sought to be precluded in the second trial must be an ultimate fact for the second trial, not merely an evidentiary fact. *Id.* at 348, 110 S.Ct. at 672. For collateral estoppel to apply, it must be shown by the party invoking the doctrine that (1) the two trials involve identical issues; (2) the evidence to be precluded was an ultimate fact necessarily decided in the first trial; and (3) the evidence is also an ultimate fact in the second trial. *Bailin,* 977 F.2d at 280–81. An ultimate fact is a fact that must be proven

beyond a reasonable doubt. *Id.* at 280 (citing Note, *Collateral Estoppel Effect of Prior Acquittals,* 46 Brooklyn L.Rev. 781, [790 & n. 45] (1980)). "Ultimate facts are those facts so crucial to a proceeding that in reaching a final judgment the trier of fact must necessarily have determined their truth or falsity. By contrast, facts introduced for their cumulative value, but which are not required to be proved in order to support a final judgment, are deemed evidentiary or mediate in nature." 46 Brooklyn L.Rev. at 784.

■ The government presents three grounds for admitting acquitted evidence. The government contends the various transactions involved are all part of the conspiracy and therefore evidence related to the acquitted counts is direct evidence of the existence of the conspiracy charged against four of the defendants in Count 1. It also contends that the transactions are direct evidence of the scheme to defraud that is charged as part of the mail fraud and wire fraud counts. The government further contends that the evidence is admissible as other bad acts evidence to show intent, plan, or knowledge with respect to individual CEA counts. *See* Fed.R.Evid. 404(b).

Defendants argue that admitting this evidence as direct evidence would be use for proof of an ultimate fact. Count 1 charges four defendants with conspiring to commit "racketeering activity consisting of multiple acts of mail fraud in violation of the federal mail fraud statute ... and wire fraud in violation of the federal wire fraud statute ..., as more fully described in the indictment, which counts are incorporated by reference." At the first trial, the jury was instructed: "To prove a 'pattern of racketeering activity' as alleged in Count 1, the government must prove agreement to commit at least two racketeering acts, as charged in the indictment...." Instruction 42. It was also instructed: "In relation to element four, 'a pattern of racketeering activity' in

---

**4.** It is noted that the government must modify the redacted version of the indictment. The redacted version does not contain the Count 2 allegations of a scheme to defraud that the remaining mail and wire fraud counts refer to as being incorporated by reference. The scheme allegations should be included in the redacted indictment.

**5.** Still pending against Greenfield are one mail fraud count (206) and two CEA counts (63 and 205). The mail fraud count directly incorporates Count 2's scheme to defraud allegations, but the other two do not. Greenfield nevertheless contends his argument should apply to the CEA counts as well.

Count 1, in order to find a defendant guilty, you must unanimously agree that the defendant agreed that one or more of the alleged conspirators would commit at least two particular charged racketeering acts in furtherance of the conspiracy." Instruction 43. Defendants contend that proof of the acquitted counts (at least the acquitted mail and wire fraud counts) would be proof of an ultimate fact since the government must prove an agreement to commit at least two charged racketeering acts. In the retrial, however, the jury will be provided with a redacted indictment. The jury will again be instructed[6] that it must find an agreement to commit two racketeering acts charged in the indictment. The acquitted counts will no longer be charged in the indictment so they cannot be the racketeering acts referred to in the indictment and instructions. Instead, to the extent evidence of acquitted counts is permitted to be presented at the retrial as direct evidence, it will be cumulative proof supporting that a conspiratorial agreement or a scheme to defraud exists. It is the conspiratorial agreement itself or the scheme to defraud itself that is the ultimate fact that must be proven beyond a reasonable doubt, not the individual transactions that were charged in the acquitted counts. Since not evidence of ultimate facts, evidence of the acquitted counts is not evidence that the government is estopped from presenting in the retrial.

■ Even if the government were estopped from presenting the acquitted evidence as direct evidence, it would not be estopped from using the evidence as 404(b) evidence. *Dowling*, 493 U.S. at 348–50, 110 S.Ct. at 672–73, is controlling on that point and defendants do not contend otherwise. Some defendants contend that intent was not an issue they raised as a defense and therefore there is no purpose that would justify admitting the evidence under 404(b). While the emphasis of each closing argument varied from defendant to defendant, no defendant conceded that he had the necessary mental

state to support all the charges against him. The government has the burden of proving beyond a reasonable doubt the necessary mental state for each remaining count. To the extent it is less of an issue for some counts, that would be weighed in the balance in determining whether particular 404(b) evidence should be admitted. There is, however, no defendant for whom state of mind is a nonexistent issue.

■ For the reasons stated, the government is not estopped from presenting evidence of the acquitted counts. That, however, does not fully resolve the question of whether the government will be permitted to present the evidence at the second trial. Admission of the evidence still must be found to be appropriate in accordance with Fed. R.Evid. 403 and/or 404(b). At the first trial, it was found that the large number of charges involved and the volume of evidence already available as to charged transactions strongly militated against admitting evidence of uncharged transactions except on a limited basis where the evidence was important to the government's case. It is within this court's discretion to exclude cumulative evidence. *See* Fed.R.Evid. 403.

This case still involves approximately 80 charged counts involving 40 or more separate transactions. In its motion, the government recites a number of uncharged transactions that were admitted at the first trial. Defendants do not specifically object to admission of evidence related to transactions that were never the basis of any charge and this evidence may be offered. Even without the admission of evidence related to the acquitted counts, there is still substantial evidence on which the government can rely. In its description of the evidence related to acquitted counts, the government does not specifically point out how any evidence is particularly pertinent to the remaining counts. The government, for example, does not argue that, as to any specific defendant, there is limited evidence as to intent or joinder in the conspiracy[7] absent admission of the acquit-

---

6. The government again challenges this instruction, but it still appears to be appropriate. In any event, that issue need not be fully resolved at this time and it can be assumed the same or a similar instruction will again be given.

7. Although the government alleges that all 10 defendants were members of the conspiracy, it only needs to prove that the four defendants charged in Count 1 were members of the conspiracy. Proof that the others joined the conspiracy may be helpful to its case, but is not essential. The government refers to the use of co-

ted evidence. There is also no argument that any of the acquitted evidence is particularly illuminating or essential in any particular way to the government's case. Nevertheless, evidence of transactions that were the basis of the 50 acquitted counts [8] described in the government's motion will be admitted.

■ As the case stands, the government's only contention is that the acquitted evidence bears on the existence of a conspiracy or the existence of a scheme to defraud. As such, it is also contended that some or all of the additional evidence would be examples supporting the state of mind elements of the various counts. Given the large amount of evidence involving numerous transactions that will otherwise be presented in this case, presenting all of the examples of allegedly illegal transactions may not be essential to the government's case and may unnecessarily prolong this very long case.[9] Whether the acquitted evidence should be kept out as needlessly cumulative is a close question. It, however, is not found that the acquittal evidence should be kept out as cumulative. Still, the government should reconsider whether all the acquitted and uncharged evidence is essential to its case and consider paring down its presentation to only that evidence which is most illuminating or necessary to its case.

■ If the government proves the commission of any particular transaction for which a defendant has already been acquitted, defendant Baker requests that the jury

be informed of the prior acquittal. Baker cites appellate court opinions that refer to the trial court giving such an instruction, but does not cite any case that addresses the legal issue of whether a defendant is entitled to such an instruction. Other cases, however, hold that such an instruction should not be given. *United States v. Jones,* 808 F.2d 561, 566–67 (7th Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987); *United States v. Viserto,* 596 F.2d 531, 536–37 (2d Cir.), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). *See also Prince v. Lockhart,* 971 F.2d 118, 122 (8th Cir.1882); *United States v. Giovanelli,* 945 F.2d 479, 486–89 (2d Cir.1991). It is unlikely that such an instruction would be necessary in the present case. To the extent any testimony from the first trial is used for impeachment or some other appropriate purpose, no reference will be made to a prior trial of these defendants. The first trial will simply be referred to as a "proceeding."[10]

■ The government also moves for admission of evidence related to the obstruction of justice charges against defendant Wright. At the first trial, this court found that the admission of such evidence (which was arguably equivocal) would be unduly prejudicial, particularly to the other defendants who are alleged to have conspired with Wright, but against whom there are no allegations of obstruction. At the first trial, evidence as to the allegedly obstructive conduct was presented without any advance notice and was

conspirator admissions. *See* Fed.R.Evid. 801(d)(2)(e). However, such evidence was not used for that purpose at the first trial. *See* Instructions 10, 35, 36.

8. There are less than 50 transactions. Many of the transactions on 30 different dates give rise to more than one charge.

9. It is argued that, in applying the balancing tests under Rules 403 and 404(b), defendants' prior acquittals should be taken into account. Defendants claim prejudice by having to defend these charges a second time and by the fact that the government has had the opportunity to hone its presentation after its first unsuccessful attempt. While such prejudice might be accorded some weight in the balance, it certainly would not be determinative or conclusive, and might not even constitute a substantial factor to consider. *See United States v. Blyden,* 964 F.2d 1375, 1378 (3d Cir.1992); *United States v. Arboleda,* 929 F.2d

858, 867 (1st Cir.1991). In this case, the government has available to draw upon a pool of evidence of a substantial number of allegedly illegal transactions that have never been charged. The government has available more cumulative evidence than it would be reasonable to present in proving its case. Assuming particular uncharged evidence is of equal probative value with particular acquitted evidence and all other relevant factors balance out, then the prejudice against a defendant involved in again using the acquitted evidence would favor use of the uncharged evidence instead of the acquitted evidence.

10. Were the jury to get the impression that a prior proceeding had resulted in a conviction, then an instruction correcting that misconception might be appropriate. *See Jones, supra.* There could also be other special circumstances where reference to a prior trial (but not necessarily an acquittal) might be appropriate. *See, e.g., Giovanelli,* 945 F.2d at 488–89.

later stricken. At the retrial, the government will not be permitted to present this evidence.

The government moves in limine to limit defendant Baker's cross-examination of Brian Sledz regarding his investments in a liquor store. The government has contended that Sledz paid Baker with cash and checks for Baker's share of profits from illegal trading activity. There is a $60,000 check from Sledz to Baker with the notation liquor store. The government does not dispute Baker's right to cross-examine on the issue of whether payments from Sledz to Baker were related to the liquor store, not illegal trading activity. It contends, however, that the cross-examination at the first trial strayed well beyond this point. Baker is certainly entitled to cross-examine on this issue and some background as to the liquor store is fair cross-examination. Baker's questioning should be directed toward the purpose of showing what the $60,000 payment was for. Baker is directed to so limit his cross-examination.

 The government moves for disclosure by defendant Baker of evidence concerning a defense based on mental disease or defect. Prior to the first trial, Baker disclosed that he might introduce evidence regarding alcohol consumption and his mental state during some of the conduct alleged in the indictment. It was stated that this might include expert testimony. Such testimony, however, was not used at the first trial and no defense based on alcoholism or alcohol consumption was argued to the jury. Defendant Baker has again informed the government that such a defense might be presented at the second trial. Discovery under Rule 16 is very limited in scope. Discovery from the defendant is limited to books, papers, documents, photographs, tangible objects, and reports of examinations and tests. Fed. R.Crim.P. 16(b). The government is only entitled to documents and tangible evidence; it cannot request that Baker answer interrogatories about his defense or provide a list of witnesses. *United States v. Peters,* 937 F.2d 1422, 1424–25 (9th Cir.1991). *Cf. United States v. Shue,* 766 F.2d 1122, 1135 (7th Cir.1985), *cert. denied,* 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987); *United States v. Alex,* 791 F.Supp. 723, 729 (N.D.Ill.

1992). Baker does not object to complying with Rule 16, but declines revealing such information until shortly before such testimony is presented. Just as with practices regarding the revelation of Jencks Act material to defendants, the government should not expect to receive particulars as to defense witnesses until shortly before they are to testify. *See United States v. Pulvirenti,* 408 F.Supp. 12, 14 (E.D.Mich.1976). Waiting until later to reveal the documents is particularly appropriate where, as here, defendant Baker may again decide not to present the defense. Defendant Baker is to make the required disclosures sufficiently in advance of testimony so as not to delay the trial.

Defendants Smith and Marren have moved to renew previously filed motions and to adopt motions of codefendants. Defendant Baker has also moved to renew his motions. This court has previously entered an order that, where there is no indication to the contrary, the motion of a particular defendant will be treated as being brought on behalf of all defendants for whom the issue raised would apply. That order continues to apply. In today's order and future orders, reference to a defendant bringing a particular motion is only for the purpose of identifying the motion. The motion should be understood as applying to any defendant against whom there are charges involving the same issues. All evidentiary rulings from the first trial shall continue to apply except to the extent that further rulings are made that are expressly or implicitly inconsistent with the prior rulings. It is the obligation of the parties to bring to the court's attention any prior rulings on the same evidence or issues.

Defendant Baker has moved for the production of exculpatory evidence. FBI agent Volk is a key witness of the government who went undercover to pose as a trader in the yen pit. Baker points to numerous computational errors that Volk made during his trading activity. Baker requests that the government reveal any information it may have as to Volk having a disability or infirmity that could have contributed to making such errors. Without expressly stating that no such evidence exists, the government re-

sponds that it is well aware of its obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The court understands this to be a representation that the government has no such information. If, on the other hand, the government meant that it has such information, but that it need not be disclosed to the defendants, within five days the government shall file a brief not to exceed five pages explaining why it need not disclose such information.

Defendant Baker's motion regarding the designation of tape recordings is denied without prejudice based on the government's representation that it will provide such a designation by January 31, 1993.

Defendant Baker has moved for the presentation of a revised *Santiago* proffer in light of the evidence to be presented at the second trial. *See generally United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978); *United States v. Rodriguez,* 975 F.2d 404, 405–06 (7th Cir.1992). As the government points out, this court found the *Santiago* proffer for the first trial to be sufficient and also held, in ruling on a posttrial motion, that sufficient evidence remained to support the existence of a conspiracy. *See* June 26, 1991 Order at 6–7. For these reasons, presentation of a revised *Santiago* proffer would be unnecessary. The court already has sufficient information from which it can make the preliminary determination that there is sufficient evidence to support the existence of a conspiracy. *Cf. United States v. Cox,* 923 F.2d 519, 526 (7th Cir.1991) (there are a variety of methods by which a court may make the preliminary determination of the existence of a conspiracy). Also, the jury was not instructed at the first trial that it could treat any statements as co-conspirator admissions and it is assumed that the same will be true of the second trial. A preliminary determination of the existence of a conspiracy, however, is still necessary for a determination that there is a foundation to prove the acts of all ten defendants relevant to showing the existence of a conspiracy. *See* Fed.R.Evid. 104(a). It is found that a sufficient basis exists for the government to seek to prove the existence of a conspiracy involving all defendants.

■ Defendants Baker, O'Malley, and Sidel move for severance of the wash sale counts, Counts 140, 359, 362, 366, and 367. These counts involved transactions between traders; they do not involve trading on behalf of a customer. The indictment does not specifically charge that these transactions are part of the conspiracy. At the first trial, however, the government argued that these transactions were part of the scheme. Such a use is permissible. This court previously held that these counts could be joined in the indictment, *see* July 17, 1990 Order at 5–6, and no reason is found to change that determination in light of evidence presented at the first trial and the reduced number of counts for the second trial. These counts may properly be joined under Rule 8. *See United States v. Koen,* 982 F.2d 1101, 1111–12 (7th Cir.1992). Also, defendants are not prejudiced such that severance should be granted under Rule 14. *Cf.* September 21, 1990 Order at 5.

Defendant Greenfield represents that he is going to adopt the defense that the allegedly improper trading was standard practice at the Chicago Mercantile Exchange and condoned by officials of the Exchange and the Commodity Futures Trading Commission. Defendants Cali and Pace adopted such a defense at the first trial, and Greenfield objected to their presence at trial. Although Cali's and Pace's defense was not mutually antagonistic with the defenses of the other defendants, *see* September 21, 1990 Order at 1–3, the charges against those two defendants were eventually severed from the trial when it became evident that the other defendants would be unduly prejudiced. *See* October 22, 1990 Order at 1–3. Greenfield and Baker have moved for severance of the charges against Greenfield based on the inconsistencies between Greenfield's defense and the defenses of the other 9 remaining defendants. The government contends that Greenfield has not adequately set forth facts or law in support of his defense to permit the court to presently consider it to be a basis for severance. The court agrees. No legal or factual support has been advanced to support such a defense by Greenfield.

IT IS THEREFORE ORDERED that:

(1) Government's (a) motion for a pretrial ruling to admit certain evidence [# 1098] is granted in part and denied in part; (b) motion in limine [# 1096] is granted in part and

denied in part; and (c) motion for disclosure of information relevant to defendant Baker's evidence concerning mental disease or defect [# 1124] is granted in part and denied in part.

(2) Defendant Greenfield's (a) motion seeking an order of dismissal as to his three counts [# 1083] is denied and (b) motion to sever [#.1082] is denied.

(3) Motion of defendants Smith and Marren to renew pretrial motions previously filed and to adopt motions of codefendants [# 1091] is granted in part and denied in part.

(4) Defendant Baker's (a) motion to renew motions in limine previously granted by the court [# 1085] is granted in part and denied in part; (b) motion for production of exculpatory evidence [# 1086] is denied without prejudice; (c) motion for designation of tape recordings to be offered at trial [# 1087] is denied without prejudice as moot; (d) motion for revised *Santiago* proffer [# 1088] is denied; (e) motion to sever Counts 359, 362, 366, and 367 of superseding indictment [# 1089] is denied; and (f) motion for severance from Michael Greenfield is denied.

(5) Defendant O'Malley's motion for severance of Count 366 [# 1099] is denied.

(6) Defendant Sidel's motion for severance of Counts 140, 359, 362, and 367 pursuant to Federal Rules of Criminal Procedure [# 1095] is denied.

### ON MOTION FOR STAY

A second interlocutory appeal has been taken in this case after a mistrial. The question before the court is whether a stay should be granted pending this appeal.

The original indictment in this case was returned on August 2, 1989. The indictment was superseded three times. The third superseding indictment was returned exactly one year after the original indictment was returned. Trial of this case started in September 1990. The case went to the jury in February 1991. A verdict was returned in March 1991. Defendants were found not guilty on approximately 120 counts and the jury hung on approximately 80 counts.

Thereafter, a number of posttrial motions were filed, including various defendants' motions to dismiss the remaining counts. Most of those motions were denied in an order dated June 26, 1991. One of the defendants, Bailin, subsequently appealed the denial of his motion based on double jeopardy and the government filed a cross-appeal. The retrial was then postponed pending resolution of the appeals. The Seventh Circuit issued its ruling on October 1, 1992. *See United States v. Bailin,* 977 F.2d 270 (7th Cir.1992). The mandate was returned on October 23, 1992.

On October 27, 1992, a trial date of January 11, 1993 was set and a briefing schedule was set for any pretrial motions. On November 3, 1992, I recused myself from the case because of a conflict of interest with an attorney who had filed an appearance on behalf of a defendant. The case was reassigned to another judge who extended the briefing schedule. The attorney whose appearance had necessitated my recusal withdrew from the case. On November 18, 1992, the case was reassigned to me. A new trial date of February 8, 1993 was set and briefing was completed under the new schedule. The retrial of this case has been estimated to last 8 to 12 weeks or more.

One of the motions filed was the government's motion to admit certain evidence, which included a request to admit evidence related to previously acquitted counts. It became fully briefed on January 14, 1993. The pending motions were ruled upon in an order dated January 22, 1993. See page 1269. At least five defendants have filed notices of appeal from the January 22 Order. Two defendants have moved to stay the proceedings pending resolution of the interlocutory appeal. At least one other defendant has expressly joined in that motion and no defendant has expressed opposition to a stay. As has been previously ordered, the motion for a stay is treated as being on behalf of all defendants. The government opposes the stay. For the reasons stated below, the motions for a stay of proceedings pending the interlocutory appeal are denied.[1]

---

1. Since a large percentage of prospective jurors would not be able to serve on a trial of this length, a special panel has been randomly selected for this case and that panel has been pre-screened to excuse persons who cannot serve on a lengthy trial. The remaining panel members have been notified to appear on February 8, 1993, but can be notified to appear on a different date during February. However, if the trial is

In an order dated January 22, 1993, this court held that the government was not precluded from using evidence related to counts on which defendants were acquitted in a prior trial. *See* January 22 Order at 1272–1273.[2] It was also found that such evidence would not be excluded as cumulative. *Id.* at 1273–1275. As of this writing, at least five defendants have filed notices that they are appealing that ruling. Defendants have moved to stay proceedings pending resolution of the interlocutory appeal. No defendant has opposed the request for a stay, but the government has. This case is set for trial beginning February 8, 1993.

■ It is well established that criminal defendants may take an interlocutory appeal on the issue of whether double jeopardy precludes the prosecution of particular counts of an indictment. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *United States v. Bailin,* 977 F.2d 270, 274 n. 4 (7th Cir.1992); *United States v. Power,* 978 F.2d 354, 358 (7th Cir.1992). That, however, is not the issue defendants seek to appeal in this case. First, defendants rely on issue preclusion or estoppel, not necessarily double jeopardy. In *Bailin,* the Seventh Circuit indicated that it was an open question whether issue preclusion or estoppel is part of a defendant's double jeopardy protections. *Bailin,* 977 F.2d at 274 n. 3. The Seventh Circuit found that the issue raised by Bailin[3] on appeal was a double jeopardy issue, not issue preclusion. *Id.* at 281. The Seventh Circuit held only that it had jurisdiction over defendant's interlocutory appeal of a double jeopardy issue. *Id.* at 274 n. 4. The Seventh Circuit's consideration of issue preclusion was based on the government's right to appeal pretrial rulings

under 18 U.S.C. § 3731. *Bailin,* 977 F.2d at 274 n. 4.

Defendants rely on *United States v. Patterson,* 782 F.2d 68 (7th Cir.1986), as holding that estoppel can be a basis for an interlocutory appeal. In that case, the Seventh Circuit considered estoppel issues on an interlocutory appeal and indicated that such claims can be appealed on an interlocutory basis. *See id.* at 72 n. 7. Other circuits are in accord. *See United States v. Cejas,* 817 F.2d 595, 596 (9th Cir.1987); *United States v. Mock,* 604 F.2d 336, 338 (5th Cir.1979) (collecting cases). Estoppel issues, therefore, can be a basis for an interlocutory appeal.

■ The more important distinction between defendants' pending appeal and *Abney* and *Patterson* is that *Abney* and *Patterson* involve attempts to stop prosecution of particular charges, whereas defendants' pending appeals only involve the issue of estopping use of particular evidence.[4] No Supreme Court or Seventh Circuit case has been found that addresses the question of whether such an issue is appealable on an interlocutory basis.[5] However, a number of circuits have addressed the issue and consistently hold that evidentiary rulings involving estoppel are not appealable by defendants on an interlocutory basis. *United States v. Head,* 697 F.2d 1200, 1205 (4th Cir.1982), *cert. denied,* 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983); *United States v. Mock,* 604 F.2d 336, 339–40 (5th Cir.1979); *United States v. Lee,* 622 F.2d 787, 791 (5th Cir. 1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981); *United States v. Levy,* 803 F.2d 1390, 1399 n. 45 (5th Cir. 1986); *United States v. Gulledge,* 739 F.2d 582, 586–87 (11th Cir.1984); *United States v. Mulherin,* 710 F.2d 731, 740 n. 5 (11th Cir. 1983), *cert. denied,* 464 U.S. 964, 104 S.Ct.

---

significantly delayed, a new panel will have to be selected and prescreened. If defendants seek a stay from the Seventh Circuit, it is requested that the parties act expeditiously and that they ask the Seventh Circuit to rule on any request for a stay on an expedited basis.

2. Familiarity with the January 22 Order is presumed.

3. Bailin was the only defendant to previously take an appeal. The other defendants were part of the interlocutory appeal as cross-appellees to the government's cross-appeal.

4. Defendant Greenfield's appeal could include a distinct issue that is separately discussed below.

5. *Abney* distinguishes the appeal involved in that case from interlocutory appeals of evidentiary rulings. *See id.,* 431 U.S. at 659, 97 S.Ct. at 2040 (citing *Di Bella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); *Cogen v. United States,* 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929)). Those, however, were evidentiary rulings that did not involve estoppel issues or any issues related to double jeopardy. *Cf. Mock,* 604 F.2d at 338–39.

402, 78 L.Ed.2d 343 (1983), & *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 703 (1984). *See also Reimnitz v. State's Attorney of Cook County*, 596 F.Supp. 47, 59–61 (N.D.Ill.1984), *aff'd*, 761 F.2d 405 (7th Cir. 1985); *United States v. Tom*, 787 F.2d 65, 69 (2d Cir.1986); *United States v. Carney*, 665 F.2d 1064, 1065 (D.C.Cir.), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981); *United States v. Powell*, 632 F.2d 754, 758 (9th Cir.1980). It has also been held that double jeopardy claims that do not involve dismissal of a count are not appealable on an interlocutory basis. *United States v. Witten*, 965 F.2d 774, 776 (9th Cir.1992); *Tom*, 787 F.2d at 69. *See also United States v. Hornung*, 785 F.2d 868, 870 (10th Cir. 1986). Where there is no Seventh Circuit precedent, this court should defer to the consistent precedents of other courts of appeal. *See Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir.1987). Moreover, this court finds the analysis contained in *Mock*, 604 F.2d at 339–40, highly persuasive. It is held that the ruling on the admission of acquitted evidence is not an appealable order.

The order from which defendants have appealed is not appealable. Therefore, this court may proceed with the trial of this case. *Mock*, 604 F.2d at 340–41 (quoting *United States v. Hitchmon*, 602 F.2d 689, 694 (5th Cir.1979) (en banc)).

■■■■■ Even if the order as to admission of acquitted evidence were appealable, this court need not stay further proceedings if the issues raised are frivolous or do not raise any colorable double jeopardy issues. *United States v. Powers*, 978 F.2d 354, 358 (7th Cir.1992); *United States v. Cannon*, 715 F.2d 1228, 1231 (7th Cir.1983), *cert. denied*, 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984). Even if one issue raises double jeopardy questions that are appealable, other issues that do not raise double jeopardy questions cannot be appealed at the same time. *Abney*, 431 U.S. at 662–63, 97 S.Ct. at 2041.

■■■ Defendants point to this court's statement that the January 22 ruling involved a "close question." January 22 Order at 1274. The close question, however, was not whether the acquitted evidence was admissible without violating estoppel. The close question was, once such evidence is determined to be otherwise admissible, whether the use of any such evidence should be precluded as cumulative. That is an evidentiary question, not an estoppel or double jeopardy question. The estoppel issue is whether the prior acquittals bar use of the acquittal evidence.

Whether use of the evidence was barred by estoppel was not a difficult question. *Dowling v. United States*, 493 U.S. 342, 348–50, 110 S.Ct. 668, 672–73, 107 L.Ed.2d 708 (1990), is directly on point on the question of whether the acquitted evidence could be used as Fed.R.Evid. 404(b) evidence, and *Bailin*, *supra*, provided recent guidance in this case from the Court of Appeals. It clearly would have been frivolous to argue otherwise on the 404(b) issue and defendants did not. On the issue of use of acquitted evidence as 404(b) material, defendants argued only that such use would be cumulative or unduly prejudicial. *See* January 22 Order at 1273. They raised only an evidentiary issue on the admission of 404(b) material; they did not raise any double jeopardy or estoppel issue. There is no colorable double jeopardy issue to consider as to use of the acquitted evidence as 404(b) material.

On the question of using the acquitted evidence as direct evidence, it was found that the evidence would not constitute an "ultimate fact" in the retrial and therefore the government is not estopped from using it. January 22 Order at 1272. The redacted version of the indictment will eliminate acquitted counts so that none can be considered a predicate racketeering act and therefore none will be an ultimate fact.[6] There is no colorable argument that the acquitted evidence is an ultimate fact.[7]

---

**6.** To the extent there is any implication to the contrary, an appropriate instruction would dispel any doubt.

**7.** In his "submission," defendant Greenfield questions why, if the January 22 Order had gone the other way, a hypothetical appeal by the government would be nonfrivolous, but an appeal by the defendants of constitutional issues would be frivolous. Greenfield apparently is referring to the clear indications in the government's motion to admit certain evidence that it would appeal if it lost. This court has never made a determina-

The issue of the government using acquitted evidence is not an issue that can be appealed on an interlocutory basis. Alternatively, no colorable double jeopardy/estoppel issue exists for appeal. For these reasons, the upcoming trial will not be stayed.

■■■■■ The appeal of defendant Greenfield presents an additional question. Greenfield contended that prosecution of the three remaining counts against him were barred by double jeopardy or estoppel. *See* January 22 Order at 1272. Since he argued that the prosecution of entire counts were barred, he has an appealable issue.[8] Greenfield, however, has no colorable double jeopardy issue to present on appeal. He argued that the non-existence of a scheme to defraud had been conclusively determined by the not guilty verdict on Count 2. A scheme to defraud, however, is not even a necessary element of the two Commodity Exchange Act counts pending against him. It is an element of the remaining mail fraud count. However, as to that count, it is frivolous to argue that any of the not guilty verdicts conclusively established that the jury found no scheme to defraud. Greenfield's appeal of this issue does not raise a colorable double jeopardy claim. It is also concluded that a stay should be denied because this issue could have been appealed when a similar motion was denied prior to the first interlocutory appeal. *See United States v. Bizzard,* 674 F.2d 1382, 1385 (11th Cir.), *cert. denied,* 459 U.S. 973, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982). *Cf. United States v. Tucker,* 646 F.Supp. 1543 (N.D.Ala. 1986).

IT IS THEREFORE ORDERED that the pending motions for a stay of trial are denied.

tion that such a hypothetical appeal would have been nonfrivolous. It is noted, however, that the government has a statutory right to appeal certain evidentiary rulings. *See* 18 U.S.C. § 3731. Defendants, however, can only appeal orders that are considered final under the collateral order doctrine. In the circumstances of this case, this requires that defendants have colorable double jeopardy/estoppel issues for appeal, not merely colorable appeals on evidentiary issues. It is not held that defendants lack any colorable evidentiary issues, only that they lack any colorable double jeopardy/estoppel issues for appeal.

8. Limited to the specific argument raised by Greenfield, it could be held that he is raising an estoppel argument that is not based on double jeopardy. He did not base his estoppel argument on a not guilty verdict on one of his counts. He based his estoppel argument on a not guilty verdict on Count 2 which only pertained to defendant Sidel. It is recognized, however, that Greenfield was found not guilty on Count 71 (wire fraud) and Count 114 (mail fraud), both of which incorporated the allegations of a scheme to defraud set forth in Count 2.